UNITED STATES, Appellee

v.

Neil S. LUBASKY, Chief Warrant Officer Four
U.S. Army, Appellant

No. 09-0043

Crim. App. No. 20020924

United States Court of Appeals for the Armed Forces

Argued September 22, 2009

Decided January 20, 2010

RYAN, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.


Counsel

For Appellant:  William E. Cassara, Esq. (argued); Lieutenant
Colonel Jonathan F. Potter, Major Timothy D. Litka, and Captain
Jennifer A. Parker (on brief).

For Appellee:  Captain Benjamin M. Owens-Filice (argued);
Colonel Denise R. Lind, Lieutenant Colonel Francis C. Kiley,
Major Teresa T. Phelps, and Major Lisa L. Gumbs (on brief);
Colonel Norman F. J. Allen III.


Military Judges:  Robert Swann (trial) and Timothy Grammel
(rehearing).


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Lubasky, No. 09-0043/AR

Judge RYAN delivered the opinion of the Court.

This case presents two questions: (1) whether the unauthorized use of another's credit and debit cards can constitute a larceny against that person under Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921 (2006); and (2) if not, whether we may nonetheless affirm such a conviction if there is sufficient evidence that the accused committed a larceny of someone's property.[1] First, we agree with Appellant that the credit card transactions constituted larceny against someone other than Mary Shirley, the owner of the cards. However, under the facts of this case, we agree with the United States Army Court of Criminal Appeals (CCA) that the evidence is legally sufficient to support a conviction for larceny against Mary Shirley as to the ATM and other debit transactions involving her checking account. Second, we reject the Government's argument that a change in the subject of the larceny at this stage of review may nonetheless be analyzed and upheld as a nonfatal variance: under the UCMJ and the Rules for Courts-Martial (R.C.M.), "variance" occurs at trial, not the

---

[1] We granted the following issues:

I. WHETHER APPELLANT COMMITTED LARCENIES OF M.S.'S PROPERTY BY ENGAGING IN THE UNAUTHORIZED USE OF HER CREDIT, DEBIT, AND ATM CARDS.

II. WHETHER A VARIANCE AS TO OWNERSHIP IN LARCENY CASES IS FATAL IF THERE IS LEGALLY SUFFICIENT EVIDENCE THAT APPELLANT STILL COMMITTED A LARCENY OF PROPERTY.

appellate level.  Compare R.C.M. 918(a)(1) (describing the various possible findings as to a specification), with Article 59(b), UCMJ, 10 U.S.C. § 859(b) (2006) (describing appellate power to affirm a lesser included offense (LIO) instead of a finding of guilty).  And while this Court may affirm an LIO under Article 59, UCMJ, larceny from one person is not an LIO of larceny from another person.

## I.  Procedural History

A general court-martial comprised of a military judge alone convicted Appellant, contrary to his pleas, of fifteen of forty-three charged specifications of larceny from Mary Shirley (Charge I), and one of three charged specifications of conduct unbecoming an officer and a gentleman (Charge II), violations of Article 121, UCMJ, and Article 133, UCMJ, 10 U.S.C. § 933 (2006).  The sentence adjudged by the court-martial included twenty-two months of confinement; forfeiture of all pay and allowances; dismissal, which was recommended to be suspended; and a $50,000 fine, with an additional two years of confinement if not paid.  The convening authority (CA) approved the adjudged sentence but suspended the fine "for a period of 60 days, conditioned upon the accused making restitution in the amount of $42,267.00 to the victim, at which time, unless the suspension is sooner vacated for failure to satisfy the condition, the

suspended part of the sentence will be remitted without further action."

On appeal, the CCA dismissed Specification 43 of the larceny charge (Charge I), affirmed the remaining guilty findings for Charge I, dismissed the conduct unbecoming specification and charge (Charge II), set aside the sentence, and authorized a sentence rehearing. United States v. Lubasky (Lubasky I), No. ARMY 20020924, 2006 CCA LEXIS 390, at *8-*9 (A. Ct. Crim. App. Jan. 31, 2006). Upon sentence rehearing, the officer members sentenced Appellant to forty-two months of confinement; a $3,322.21 fine, with an additional six months of confinement if not paid; and forfeiture of $5,811.00 pay per month for 108 months. The CA approved only so much of the sentence as provided for twenty-two months of confinement and a forfeiture of $5,811.00 pay per month for 108 months; the CCA approved the twenty-two months of confinement but adjusted the forfeiture to $5,811.00 pay per month for the first twenty-two months, followed by a forfeiture of $3,835.00 per month for the remaining eighty-six months. United States v. Lubasky (Lubasky II), No. ARMY 20020924, 2008 CCA LEXIS 554, at *9-*10 (A. Ct. Crim. App. July 29, 2008).[2]

_____

[2] The CCA added:

> To the extent appellant was subject to excessive forfeitures based on release from confinement before

Consequently, only Charge I and particular specifications thereunder remain at issue in this appeal -- ATM withdrawals from the Union Planters Bank (UPB) account (Specifications 4 and 5), other debit transactions from the UPB account (Specifications 9, 10, 11, 13, and 14), credit card transactions with the First USA Visa card (Specification 18), cash advances with the MBNA MasterCard (Specifications 22 and 23), credit card transactions with the MBNA MasterCard (Specifications 27, 29, and 30), and credit card transactions with the British Petroleum (BP) card (Specification 41).

## II.  Facts

In September 1998, the Army assigned Appellant as a Casualty Assistance Officer (CAO) to temporarily help seventy-seven-year-old Mary Shirley manage her financial affairs and procure a new military identification (ID) card upon the death of her husband, Lieutenant Colonel (ret.) Courtney Shirley. Appellant helped Mary Shirley pay her bills, took care of some of her household needs, and brought her cash, which she gave to her friend and friend's mother to go shopping for her.  Although Appellant's assistance should have concluded in December 1998 --

the expiration of the twenty-two month period, such excess forfeitures are not affirmed and the lower $3,835.00 monthly forfeiture figure shall apply to the portion of the twenty-two month period during which appellant was not confined.

Lubasky II, 2008 CCA LEXIS 554, at *10 n.8.

after he procured a new ID card for Shirley -- Appellant offered, and Shirley accepted, further assistance with her financial affairs.

As relevant to the issues in this case, between December 1998 through June 2000, Appellant had limited and specific authority from Shirley to use specific credit cards and to access the UPB account. At other times, Appellant obtained access to her funds and used her credit cards and bank funds without her knowledge or permission.

In approximately December 1998, Appellant gained access to the UPB checking account while Shirley was in a nursing home. Austin Jason Turnbow, a UPB financial services employee, testified that he and his manager paid a personal visit to Shirley before adding Appellant to the account. While Turnbow described Appellant's status on the account as one of "joint ownership," that term was never defined. And when asked whether he had "the impression that [Appellant] was being added as a full and joint owner on the account to have personal ownership of [Shirley's] finances," Turnbow replied, "Absolutely not." Rather, the sole reason Appellant was added to the account was to help pay Shirley's bills and expenses and to "do things that she couldn't do." Appellant knew this, and he "made a point to make it clear [to Turnbow] that he did not intend to use it [the UPB account] for his own personal needs." Thereafter, up until

June 2000, all but one of the monthly bank statements were sent to Appellant's work address.

"Fraud Alert" contacted Shirley in June 2000 about activity on her credit cards, prompting her to call the police. At this time she also discovered the thirty-nine ATM and other debit transactions from the UPB account, made in Georgia, Florida, and Texas between June 1999 and June 2000, that are still in issue.

## III. Discussion

## Issue I

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Chatfield, 67 M.J. 432, 441 (C.A.A.F. 2009) (quoting United States v. Dobson, 63 M.J. 1, 21 (C.A.A.F. 2006)). A servicemember commits larceny under Article 121(a)(1), UCMJ, when that person:

> wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind . . . with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner.

As used in Article 121, UCMJ, the single term "larceny" encompasses and consolidates what in the past were separate crimes, i.e., larceny, larceny by trick, embezzlement, and

7

obtaining property by false pretenses.  See United States v. Antonelli, 35 M.J. 122, 124 (C.M.A. 1992) (citing Hearings on H.R. 2498 Before a Subcommittee of the House Committee on Armed Services, 81st Cong. 1232 (1949)).  Because of this, "the particular means of acquisition of the property became relatively unimportant . . . ."  United States v. Aldridge, 25 C.M.A. 330, 331-32, 8 C.M.R. 130, 131-32 (1953).

Appellant argues that the credit and debit card transactions at issue in this case could not be larcenies from Shirley.  Rather, he suggests that they constitute larcenies, if larcenies at all, from the credit card issuers and the business establishments where the goods were purchased.  He further argues that the transactions involving the UPB account could not constitute larceny at all because he was named on the account as an account owner.  We agree in part and disagree in part.

Appellant was alleged to have committed larcenies from Shirley by making unauthorized use of Shirley's credit cards -- a First USA Visa, an MBNA Mastercard, and a BP card -- to obtain cash advances and unspecified goods of a certain value.  While the evidence is legally sufficient to support the conclusion that the use made of these credit cards constituted a wrongful taking of property with the requisite intent, we nonetheless agree with Appellant that the unauthorized use of those cards was not a larceny from Shirley.  The 2002 amendments to the

Manual for Courts-Martial (MCM) are instructive in this regard: "Wrongfully engaging in a credit, debit, or electronic transaction to obtain goods or money is an obtaining-type larceny by false pretense. Such use to obtain goods is usually a larceny of those goods from the merchant offering them." MCM pt. IV, para. 46.c(1)(h)(vi) (2002 ed.).

While this amendment post-dates Appellant's court-martial, under Article 121, UCMJ, larceny always requires that the accused wrongfully obtain money or goods of a certain value from a person or entity with a superior possessory interest. See MCM, Analysis of Punitive Articles app. 23 at A23-16 (2008 ed.) [hereinafter Drafters' Analysis]. In using the credit cards in this case, Appellant did not obtain anything from Shirley. Rather, he obtained those things from other entities. For these reasons, the proper subject of the credit-card-transaction larcenies in this case was not Shirley.

With respect to the ATM and other debit transactions from the UPB account, however, Appellant's arguments fail. While it is true that the 2002 amendments suggest that debit card transactions are "usually a larceny of those goods from the merchant offering them" and that ATM withdrawals are "usually a larceny of money from the entity presenting the money," MCM pt. IV, para. 46.c(1)(h)(vi) (2002 ed.) (emphasis added), alternative charging theories remain available if warranted by

the facts. Drafters' Analysis at A23-15. Under the particular facts of this case, the evidence is legally sufficient to support the finding that these transactions constituted larceny from Shirley.[3] First, assuming that Appellant had an ownership interest in the account equal to that of Shirley, the evidence supports a conclusion that he obtained access to the account as a joint owner by false pretenses -- representing to Shirley that he would use her funds in the manner she authorized -- with the actual intent to use the funds for his own purposes instead. In using false pretenses to obtain access to Shirley's UPB account in this manner, Appellant committed larceny against Shirley.

Moreover, "[w]hatever apparent legal authority appellant possessed to use the UPB checking account funds, it was properly limited in scope by Mrs. Shirley's beneficiary status and appellant's fiduciary role." Lubasky I, 2006 CCA LEXIS 390, at *7 n.*.[4] In other words, while adding Appellant to the account

---

[3] Although "[t]wo legal interests may coexist in the same property and the invasion of either may sustain a larceny prosecution," United States v. Leslie, 13 M.J. 170, 172 (C.M.A. 1982) (discussing that issue in the context of bailments and trusts), this case does not raise -- and therefore we do not discuss -- what other entities here could be the proper subject of a larceny.

[4] Appellant argues that Tenn. Code. Ann. § 45-2-703 (2009), gives a joint owner of a bank account the right to withdraw all funds from the account. But that provision sweeps less broadly than Appellant suggests, see Leffew v. Mayes, 685 S.W.2d 288, 291 (Tenn. Ct. App. 1984) ("Even though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the other joint tenant for the excess so

vested him with the authority to retrieve funds from it, his authority to make various uses of those funds was limited to making necessary purchases for Shirley, not purchasing things for himself.  See United States v. Willard, 48 M.J. 147, 148-50 (C.A.A.F. 1998) (upholding larceny conviction as legally sufficient where accused exceeded actual authority to withdraw money to pay bills, in reliance on general power of attorney granted by his roommate, and instead kept money for himself; "A power of attorney is not a license to embezzle.  The power of attorney may convey apparent authority vis-[à]-vis an innocent third party, but it does not empower the grantee to exceed the terms of his or her actual authority.").  Appellant had authority to spend money from the UPB account, but only within the limits set by Shirley.

Drawing all inferences in favor of the Government, a reasonable factfinder could have found beyond a reasonable doubt that the evidence with respect to the UPB specifications was legally sufficient to show that Appellant wrongfully obtained

---

withdrawn.  A contractual agreement between the bank and the joint depositors does not conclusively determine the rights between the depositors during their lifetime. . . . [Section] 45-2-703, which absolves a bank of liability upon its payment to either joint tenant or the survivor, was enacted for the protection of the bank and does not affect the rights of the joint tenants, as between themselves, during their lifetime.") (citations omitted), and does not bar his prosecution under the UCMJ.

money from Shirley with the intent to permanently deprive her of it.

### Issue II

We are left, then, with evidence that is legally insufficient as to the credit card transactions but legally sufficient as to the transactions on the UPB account.  The Government argues that we may nonetheless affirm all specifications because a larceny did occur, and "a variance in ownership is not fatal."  "A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge." United States v. Teffeau, 58 M.J. 62, 66 (C.A.A.F. 2003).  While the question whether a variance was fatal would be the one we would answer if the factfinder had made findings by exceptions and substitutions, see United States v. Marshall, 67 M.J. 418, 420-21 (C.A.A.F. 2009) (undertaking this analysis and holding the exceptions and substitutions produced a fatal variance because the change was both material and substantially prejudicial); R.C.M. 918,[5] the findings in this case were made

---

[5] R.C.M. 918(a)(1) provides:

> General findings as to a specification may be: guilty; not guilty of an offense as charged, but guilty of a named lesser included offense; guilty with exceptions, with or without substitutions[;] not

based on the charges and specifications <u>as</u> <u>drafted</u>.  There were no exceptions and substitutions by the military judge -- the factfinder in this case.

The Government nonetheless seeks to frame, and asks us to analyze, the issue of substituting victim names in larceny specifications as one of "variance."  As noted in R.C.M. 918, explained in <u>Teffeau</u>, and recently reiterated in <u>Marshall</u>, exceptions and substitutions may be made by the factfinder at the findings portion of the trial.  The question for this Court under those circumstances would be whether the findings by exceptions and substitutions created a "fatal variance" -- not permitted -- or a non-fatal variance.  <u>See</u> <u>Marshall</u>, 67 M.J. at 420; <u>Teffeau</u>, 58 M.J. at 66; R.C.M. 918.  But nothing in either the UCMJ or the R.C.M. suggests that, at this second tier of appellate review, crossing out Shirley's name on the charge sheet and inserting the name of some other entity is permissible.  While R.C.M. 918(a)(1) does describe the various possible findings as to a specification, that provision is directed at the <u>factfinder</u>:  R.C.M. 918(a)(1) does not grant us the authority the Government suggests we have.

---

guilty of the exceptions, but guilty of the substitutions, if any; not guilty only by reason of lack of mental responsibility; or, not guilty. Exceptions and substitutions may not be used to substantially change the nature of the offense or to increase the seriousness of the offense or the maximum punishment for it.

13

Article 59(b), UCMJ, which states that "[a]ny reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense," governs what this Court may do under the present circumstances. We are authorized by statute to affirm an LIO of a crime where, as here, the evidence as to the greater offense is not legally sufficient. See Article 59(b), UCMJ. But there is no authority for the proposition that larceny from one entity is an LIO of larceny from another entity. See generally United States v. Medina, 66 M.J. 21, 25 (C.A.A.F. 2008) ("'One offense is not "necessarily included" in another unless the elements of the lesser included offense are a subset of the elements of the charged offense.'" (quoting United States v. Schmuck, 489 U.S. 705, 716 (1989))).

## IV. Decision

The decision of the United States Army Court of Criminal Appeals is affirmed in part and reversed in part. The findings of guilty as to Specifications 18, 22, 23, 27, 29, 30, and 41 of Charge I are set aside, and those specifications are dismissed. The findings of guilty as to the remaining specifications (4, 5, 9, 10, 11, 13, and 14 of Charge I) are affirmed. The sentence is set aside, and the record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

14