# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

## UNITED STATES

**v.**

## Staff Sergeant GLENN D. MARCY, JR.
### United States Air Force

## ACM 38715

## 1 February 2016

Sentence adjudged 24 July 2014 by GCM convened at Ellsworth Air Force Base, South Dakota. Military Judge: Gregory O. Friedland.

Approved Sentence: Bad-conduct discharge and reduction to E-3.

Appellate Counsel for the Appellant: Captain Johnathan D. Legg.

Appellate Counsel for the United States: Major Meredith L. Steer and Gerald R. Bruce, Esquire.

Before

TELLER, SANTORO, and ZIMMERMAN
Appellate Military Judges

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

Officer members sitting as a general court-martial convicted Appellant, contrary to his pleas, of two specifications of larceny (one alleging an amount of greater than $500 and one less than $500) in violation of Article 121, UCMJ, 10 U.S.C. § 921. The adjudged and approved sentence was a bad-conduct discharge and reduction to E-3.

Appellant asserts that the evidence is legally and factually insufficient to sustain his convictions. We disagree and affirm.

*Background*

Appellant was the elected president of the Defenders Association, a private, non-profit organization whose membership was drawn from the Security Forces Squadron at Ellsworth Air Force Base. During Appellant's tenure as president, he (along with the vice president and treasurer) was granted access to the association's bank account and authorized to make withdrawals. The association's bylaws required the general membership to vote on fund expenditures greater than $150.

Appellant made several cash withdrawals from the association account. On one occasion he also drew a money order made payable to "Chexcel," a company that attempts to recover funds from bad checks presented to its merchant clients. The Government charged Appellant with larceny on 11 separate occasions totaling $9,363.18. The members convicted Appellant by exceptions and substitutions of 3 of those occasions, totaling approximately $3,200.

Additional facts necessary to resolve the assignment of error are included below.

*Legal and Factual Sufficiency*

Appellant's attack on the sufficiency of his convictions is two-fold: first, he argues the bank, not the Defenders Association, was the legal owner of the funds; and second, that his principal-agent relationship with the Defenders Association gave him lawful authority to make the withdrawals at issue from the association's account.

This court reviews issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)) (internal quotation marks omitted). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from

conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

Larceny under Article 121, UCMJ, occurs when one:

> wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind . . . with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner . . . .

*Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶¶ 46.a.(a), 46.a.(a)1 (2012 ed.). "Any of the various types of larceny under Article 121 may be charged and proved under a specification alleging that the accused 'did steal' the property in question." *MCM,* pt. IV, ¶ 46.c.(1)(a).

In *United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010), Lubasky was charged with committing larcenies in two ways: by using the victim's credit cards without authorization and by withdrawing funds from her bank account—to which he had lawful access pursuant to a power of attorney but for purposes that exceeded the scope of his authority. Our superior court reversed Lubasky's conviction related to the credit card use, holding that the credit card issuers, not the named individual, were the victims of those offenses.[*] However, the court upheld Lubasky's conviction for larceny from the checking account, noting that Lubasky "obtained access to the account as a joint owner by false pretenses—representing to [the victim] that he would use her funds in the manner she authorized—with the actual intent to use the funds for his own purposes instead. In using false pretenses to obtain access to [the victim's] account in this manner, Appellant committed larceny against [her]." *Id.* at 264.

Thereafter, in *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014), our superior court reaffirmed its position that "the victim of the larceny is the person or entity suffering the financial loss or deprived of the use or benefit of the property at issue." *Id*. at 299. The Air Force had issued Cimball Sharpton a General Purchase Card (GPC) to purchase supplies for her unit. After charges were made and approved by an appropriate Air Force official, the Air Force paid the bills using appropriated funds. Cimball Sharpton was prosecuted under Article 121 for larceny from the United States

---

[*] "Wrongfully engaging in a credit, debit, or electronic transaction to obtain goods or money is an obtaining-type larceny by false pretense. Such use to obtain goods is usually a larceny of those goods from the merchant offering them." *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010) (quoting *Manual for Courts-Martial, United States*, pt. IV, para. 46(c)(1)(h)(vi) (2002 ed.)).

Air Force after she made $20,000 in personal purchases from AAFES, Walgreens, and Walmart, for which the Air Force paid the merchants.

Appellant argues that our superior court's reversal of Lubasky's conviction for using the victim's credit card renders Appellant's conviction legally insufficient. However, Appellant was not charged with using credit cards to effect his crime. His conduct was more like Lubasky's, directly accessing the victim's depository account— facts on which our superior court sustained the larceny conviction.

Similarly, we see nothing in *Cimball Sharpton* that compels a different result. Cimball Sharpton also dealt with larceny by credit card. In that case, however, the government charged the Air Force as the victim because the credit card company had paid the merchants and the Air Force repaid the credit card company, leaving the Air Force as the only entity suffering a financial loss. Like *Cimball Sharpton*, the evidence in the instant case was that the Defenders Association ultimately suffered the financial loss.

Appellant's second argument, that he could not have committed a larceny because he had authority to access the Defenders Association's account, also fails. As our superior court said in *Lubasky*,

> [W]hile adding Appellant to the account vested him with the authority to retrieve funds from it, his authority to make various uses of those funds was limited to making necessary purchases for [the victim], not purchasing things for himself. *See United States v. Willard*, 48 M.J. 147, 148–50 (C.A.A.F. 1998).

*Lubasky*, 68 M.J. at 264.

We have considered the evidence in the light most favorable to the prosecution. We have also made allowances for not having personally observed the witnesses. Having paid particular attention to the matters raised by Appellant, we find the evidence legally sufficient to support his conviction for larceny. Appellant had authority to spend money from the Defenders Association account, but only within the limits set by the association. Moreover we are, ourselves, convinced of his guilt beyond a reasonable doubt.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.

 FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court