# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain BRIAN L. JOHNSON**
**United States Army, Appellant**

ARMY 20131075

Headquarters, Fort Campbell
Steven E. Walburn, Military Judge
Lieutenant Colonel Sebastian A. Edwards, Staff Judge Advocate (pretrial)
Colonel Jeff A. Bovarnick, Staff Judge Advocate (recommendation)
Colonel Susan K. Arnold, Staff Judge Advocate (addendum)

For Appellant: Captain Payum Doroodian, JA; James Phillips, Esquire; Sean A. Marvin, Esquire (on brief); Captain Payum Doroodian, JA; James Phillips, Esquire; Sean A. Marvin, Esquire (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Captain Anne C. Hsieh, JA (on brief).

31 March 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A panel of officer members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of disobedience of the lawful order of a superior commissioned officer, one specification of forcible sodomy, one specification of assault with an unloaded firearm, one specification of assault with a loaded firearm, one specification of assault consummated by a battery, and one specification of obstruction of justice, in violation of Articles 90, 125, 128, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 890, 925, 928 and 134 (2006)

[hereinafter UCMJ].[1]  The court-martial sentenced appellant to a dismissal and confinement for sixteen years.  The convening authority approved the sentence as adjudged.

The case is before us for review pursuant to Article 66(b), UCMJ.  Appellant raises four assignments of error, one of which merits detailed discussion and relief.[2]  Additionally, we find one additional matter that warrants discussion but not relief.  Those matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), do not merit relief.

Appellant was convicted of forcibly sodomizing his then wife, Mrs. KJ.  The two specifications of assault with a firearm (both loaded and unloaded) were also committed against Mrs. KJ.  The disobedience and obstruction offenses stem from appellant contacting his sister (in violation of a no-contact order) and threatening to sue her if she continued to "say anything else" concerning appellant and his family.  Finally, appellant was convicted of assault consummated by battery, which involved him head-butting his current wife, Mrs. CJ.

---

[1] Appellant was charged with two assaults with a loaded firearm.  The panel convicted appellant of one of these specifications and as to the other specification convicted him of the lesser included offense of simple assault with an unloaded firearm.  The panel acquitted appellant of two specifications of assault consummated by battery.

[2] Appellant, in his first assignment of error, alleges the military judge abused his discretion when he admitted a recording of a 911 phone call over defense objection.  Appellant argues the 911 recording included hearsay within hearsay and that there was insufficient evidence for the military judge to find that the declarant personally observed any assault.  In our review of the record, we find that the military judge's factual findings had substantial support in the record, were based on reasonable inferences from the evidence, and were not clearly erroneous.  *See United States v. Leedy*, 65 M.J. 208, 212-13 (C.A.A.F. 2007).

Appellant, in his second assignment of error, asserts that trial counsel's argument on findings was improper.  We find that many of the trial counsel's comments claimed as error were hard but fair blows.  *See United States v. Allen*, 11 U.S.M.C.A. 539, 29 C.M.R. 355 (1960).  To the extent that any argument constituted error, it was unpreserved and did not amount to plain error.  *See* R.C.M. 920(c).

Appellant's third assignment of error is meritorious and is discussed in depth below.

Appellant's fourth assignment of error, dilatory post-trial processing, does not warrant relief.

**FACTS**

On 23 February 2013, appellant's mother in law, Mrs. DH, received a phone call from her granddaughter (appellant's step-daughter), in which she was told that appellant "[was] hurting mommy." Mrs. DH called appellant's unit and 911. Based on those phone calls, police and a representative from appellant's unit were sent to his house. When police arrived on the scene, they found appellant's wife, Mrs. CJ, distraught, visibly upset, and with apparent injuries to her face and nose. Mrs. CJ refused to make a statement to the police or allow them to take pictures of her injuries. Mrs. CJ was more receptive, however, to the unit representative, Sergeant First Class (SFC) TB. Mrs. CJ disclosed to SFC TB that a verbal argument turned physical when appellant pinned her against the wall, put a hand around her neck, and head-butted her in the face. Appellant later made a verbal statement to a police officer that he "may have head-butted" his wife. A few days later when Mrs. CJ sought treatment for a nasal fracture, she stated that the injury had come from appellant head-butting her.

In the lead-up to trial, Mrs. CJ continued to be uncooperative with the police and Army prosecutors. She declined to testify at the Article 32, UCMJ, hearing. Notwithstanding being subpoenaed, she also did not appear at a scheduled deposition and caused a continuance by being absent on the original date of trial.

On the day the court-martial actually began, the military judge and the parties met in a Rule for Courts-Martial [hereinafter R.C.M.] 802 session and discussed Mrs. CJ's potential absence. In a subsequent Article 39(a), UCMJ, session, the military judge summarized the R.C.M. 802 session and stated his intent to take judicial notice if Mrs. CJ was again absent. During the government's opening statement, trial counsel stated that "she has been subpoenaed. We expect her to testify today." Defense counsel, in his opening statement, predicted her absence, telling the panel "[y]ou are probably not going to hear from [Mrs. CJ]." Notably, during all time periods relevant to the case, Mrs. CJ continued to reside with appellant off-post.

Mrs. CJ was not present when the government called her as their first witness. As discussed at the R.C.M. 802 session, the military judge informed the panel that he had taken judicial notice that Mrs. CJ had been repeatedly absent from the proceedings despite being properly subpoenaed. Appellant's defense counsel agreed Mrs. CJ was absent and specifically stated that he had no objection to the military judge taking judicial notice of this fact.

The government then proved appellant had head-butted Mrs. CJ through appellant's own statement to police, the 911 recording, witnesses who saw Mrs. CJ's injuries, and by laying the foundation for admitting the out-of-court statements by Mrs. CJ pursuant to Military Rules of Evidence 803(2) and 803(4). Appellant, on

the other hand, testified that during a verbal fight in which he called his wife "a whore," he determined he needed to leave the situation, and that he may have accidentally injured Mrs. CJ. He testified that the injury may have occurred while pushing past her as he was trying to leave the house and she was blocking the door.

During cross examination, appellant acknowledged Mrs. CJ continued to live with him, that she was there every night when he went home, and the original court-martial date had been postponed because of her absence. The government further elicited from appellant that he exchanged forty-two calls and texts with his wife on the original date of trial, when Mrs. CJ failed to appear. Trial counsel never explicitly asked appellant if he had obstructed his wife's presence at trial.

**LAW AND DISCUSSION**

*A. Judicial Notice of Mrs. CJ's Absence From Trial*

Although not raised by appellant, we find the military judge erred in taking judicial notice of Mrs. CJ's absence at trial.

A military judge may take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Military Rule of Evidence [hereinafter Mil. R. Evid.] 201. However, "[e]vidence which is not relevant is not admissible." Mil. R. Evid. 402. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil. R. Evid. 401.

The facts surrounding Mrs. CJ's absence were not disputed by the parties. The appropriate question, as we see it, is what is the logical and legal relevance of the fact that Mrs. CJ had been repeatedly absent from trial despite being subpoenaed? What matter of consequence was made more or less likely by her non-presence? In other words, why was her absence relevant? As the government always bears the burden of proof to establish guilt, the failure of the government to present evidence cannot be construed as positive evidence of guilt. Article 51(c)(4), UCMJ. That is, one cannot infer guilt as a consequence of the government's failure to present evidence. Additionally, while appellant was not permitted to obstruct the production of his wife, he was under no obligation to assist the government in obtaining her presence as a witness against him. It would be improper, absent evidence,[3] to infer that Mrs. CJ's absence was attributable to appellant.

---

[3] Evidence of obstruction may be admissible if it demonstrates consciousness of

(continued…)

4

If her absence despite being subpoenaed was not probative of any question at issue, the danger presented by taking judicial notice of Mrs. CJ's absence was obvious. Appellant was already charged with one obstruction offense. In proving the offenses of forcible sodomy and assault against appellant's first wife, the government introduced evidence that appellant used fear and physical violence to control her. The government also called an expert witness to educate the panel on counter-intuitive responses of victims of domestic violence.

Nonetheless, while the danger of taking judicial notice of such evidence is obvious, and thus worthy of this discussion, we also find that appellant explicitly waived the issue. As our superior court stated in *United States v. Gladue*:

> Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.[4]

67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotations and citations omitted) (footnote added).

---

(...continued)
guilt. *See United States v. Staton*, 69 M.J. 228, 231 (C.A.A.F. 2010) (Evidence that accused attempted to intimidate the trial counsel was admissible as consciousness of guilt). Such evidence of uncharged misconduct would normally be accompanied by an instruction so that the panel may properly weigh such evidence. *See United States v. Grunden*, 2 M.J. 116, 119 (C.M.A. 1977) ("When evidence of uncharged misconduct is permitted, nothing short of an instruction will suffice."). Even if we were to assume that the exchange of forty-two texts and calls on the day of trial was sufficient to establish that appellant procured his wife's absence, and therefore demonstrated a consciousness of guilt, the military judge issued no such instruction.

[4] Nonetheless this court may notice and address waived error. UCMJ art. 66(c) (A court of criminal appeals "may affirm only such findings of guilty . . . as it finds . . . on the basis of the entire record *should be approved.*") (emphasis added). We decline to exercise this "highly discretionary" authority in this case. *See United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001).

This is a case of waiver—not forfeiture. The record makes clear that appellant was not merely silent as to whether the military judge would take judicial notice of Mrs. CJ's absence. First, the parties discussed taking judicial notice of Mrs. CJ's absence during a R.C.M. 802 conference. Appellant offered no objection to the military judge's summary of the conference. Second, when asked, the defense stated they had no objection to the military judge's judicial notice, or the wording of the judicial notice. Finally, the effect of taking judicial notice was to cause the trial counsel to abandon any pursuit of the personal appearance of Mrs. CJ; a result which appellant likely believed was tactically favorable at the time he assented to the judicial notice.[5]

## B. Legal Sufficiency of Specification 2 of Charge II

Specification 2 of Charge II alleged that appellant assaulted Mrs. KJ by "*pointing* at her with a dangerous weapon, to wit: a loaded firearm."[6] (emphasis added). At trial, the government called Mrs. KJ to prove this allegation. Mrs. KJ testified that during the course of a heated argument, appellant locked the bedroom

---

[5] We note, without considering, that the post-trial matters submitted by Mrs. CJ included the following:

> "On December 19, 2013, when [appellant] lost his
> freedom, I regained mine. For two years, I lived in fear
> . . . fear that I cannot even begin to explain to anyone else.
> I am intelligent; I am educated; I am strong-willed; yet
> somehow, I fell into an abusive relationship that nearly
> destroyed me. I realize I did not testify at [appellant's]
> trial, so my plea may come as a surprise. Yet, words,
> cannot explain the situation I was in. I was always afraid.
> [Appellant] also had me convinced that my testimony
> alone was the deciding factor in his conviction. Out of
> fear for my well-being – physically, emotionally, and even
> financially – I risked everything. It took the removal of
> [appellant] from my life for me to see the disparity of it.
> For this, I am eternally grateful to the panel that was able
> to recognize what I could not."

[6] The specification reads:

> In that [appellant], U.S. Army, did, at or near Grovetown, Georgia,
> between on or about 1 January 2011 and on or about 31 January 2011,
> commit an assault upon [KJ] by pointing at her with a dangerous
> weapon, to wit: a loaded firearm.

door, removed two handguns from a dresser, laid the guns on a table and asked his then wife "[i]s this what it is going to come to?" In addition to the testimony of Mrs. KJ, the government introduced evidence that two loaded handguns were seized from appellant's house shortly after the alleged assault. In response to an inference of recent fabrication, the government further introduced the fact that Mrs. KJ sought a restraining order the next day, as well as prior consistent statements Mrs. KJ made to co-workers. However, the record of trial contains no evidence appellant "pointed" either handgun at Mrs. KJ.

Our test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *see also United States v. Barrow*, 45 M.J. 478, 479 (C.A.A.F. 1997).

Here, appellant, in the midst of a verbal altercation, displayed two firearms and asked, rhetorically, whether the use of the firearms would be necessary.

An offer-type assault is an "unlawful demonstration of violence . . . which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM],* pt. IV, ¶ 54.c.(1)(b)(ii). An assault includes "threatening words . . . accompanied by a menacing act or gesture" if the combination "constitutes a demonstration of violence." *MCM,* pt. IV, ¶ 54.c (1)(c)(ii).

In other words, displaying a firearm (even without pointing the weapon at the victim) may constitute an offer-type assault if the combination of acts and statements creates a reasonable apprehension of receiving immediate bodily harm. For example, in *United States v. Milton*, our superior court found exactly such an assault when the accused told the victim that they would have "serious problems" if the victim didn't stay away from his wife while also lifting his shirt to display (but without touching) a handgun tucked into his pants' waistband. 46 M.J. 317 (C.A.A.F. 1997).

There is, accordingly, legally (and factually) sufficient evidence in this case that appellant assaulted Mrs. KJ with a loaded firearm. The question remains however, whether the evidence introduced at trial matches the manner in which appellant was charged in committing the offense. Appellant was not charged with an assault by displaying a loaded firearm. Instead, appellant was charged with assaulting Mrs. KJ by "pointing" a loaded firearm at her. Accordingly, we must determine whether we can affirm a conviction in a circumstance where the evidence necessary to sustain the conviction requires a variance from the specification alleged. We cannot.

7

In *United States v. Lubasky*, our superior court stated that "variance occurs at trial, not the appellate level." 68 M.J. 260, 261 (C.A.A.F. 2010). That is, while the findings of a trial court may—within legal limits—vary from the alleged specification, on appeal we must conduct our legal sufficiency test based on the findings of the court-martial.[7] Accordingly, and as the issue here goes directly to an element of the offense, and as there was no evidence in the record that appellant *pointed* a loaded firearm at Mrs. KJ, we set aside the finding to Specification 2 of Charge II and provide relief in our decretal paragraph.

## CONCLUSION

The finding of guilty to Specification 2 of Charge II is set aside and that specification is DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case, and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In conducting a sentence reassessment, a Court of Criminal Appeals must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, [and] that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Sales,* 22 M.J. at 307-08 (quoting *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)). "If the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error. . . ." *Id.* at 308.

---

[7] The decision in *Lubasky* turned on the legal difference between the fact finder at trial and the United States Court of Appeals for the Armed Forces (CAAF) sitting as a court of law. 68 M.J. at 265. ("But nothing in either the UCMJ or the R.C.M. suggests that, *at this second tier of appellate review*, [variance] is permissible") (emphasis added). At least as it pertains to issues of law, we are situated similarly as the CAAF. A close reading of the case would note that the court did not directly address how *Lubasky* should be applied to a Court of Criminal Appeals exercising its fact-finding powers under Article 66(c), UCMJ. That is, could a court of criminal appeals, in a case that *is* legally sufficient, allow reasonable variance when determining "controverted questions of fact" in accordance with Article 66(c)? As the issue presented in this case (*legal* sufficiency) is a question of law, we need not decide the matter.

In evaluating the *Winckelmann* factors,[8] despite dismissing a serious aggravated assault offense which carried a maximum sentence of confinement of eight years, there is no dramatic change in the penalty landscape as appellant faced the possibility of life without parole based upon his conviction for forcible sodomy. Second, although appellant was sentenced by a panel of officer members, we have experience dealing with cases involving violent crime. We are convinced that, absent the error at trial, the panel would have sentenced appellant to not less than a sentence of fifteen years. Third, the gravamen of the criminal conduct within the original offenses remains substantially the same. Appellant remains convicted of forcible sodomy, assault consummated by a battery, assault with an unloaded firearm, obstruction of justice, and disobeying a superior commissioned officer. Thus, neither the penalty landscape nor the vast majority of admissible aggravation evidence has significantly changed. Finally, we have familiarity and experience with the remaining offenses and can reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted errors and the entire record, we AFFIRM only so much of the sentence as provides for a dismissal and confinement for fifteen years. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[8] *Winckelmann*, 73 M.J. at 15-16.