# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOSEPH R. WILSON**
**United States Army, Appellant**

ARMY 20130601

Headquarters, 7th Infantry Division
David L. Conn, Military Judge
Major Christopher M. Ford, Acting Staff Judge Advocate (pretrial)
Lieutenant Colonel Michael S. Devine, Staff Judge Advocate (recommendation)

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Payum Doroodian, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Captain Robyn M. Chatwood, JA (on brief).

5 May 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A panel with enlisted representation sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of aggravated sexual assault, one specification of abusive sexual contact, one specification of wrongful sexual contact, and one specification of forcible sodomy, in violation of Articles 120 and 125, UCMJ [hereinafter UCMJ], 10 U.S.C. §§ 920 and 925 (2006 & Supp. IV 2011). The court-martial sentenced appellant to a dishonorable discharge, confinement for two years, and reduction to the grade of E-1. The convening authority approved only twenty-three months of confinement but otherwise approved the adjudged sentence.

The case is before us for review pursuant to Article 66, UCMJ. Appellant assigns three errors, one of which merits discussion and relief.[1] Additionally, we note two additional errors which, although meriting discussion, did not prejudice appellant and do not warrant relief.

## DISCUSSION AND ANALYSIS

A. *Legal Sufficiency of Aggravated Sexual Assault and Abusive Sexual Contact*

On 2 December 2011, appellant and several other soldiers, to include Specialist (SPC) BN, were drinking at a bar outside Joint Base Lewis-McCord. Specialist BN became heavily intoxicated after consuming several alcoholic drinks. Eventually, appellant drove SPC BN home while she slept in the car for most of the drive.

Once at her apartment, SPC BN got into bed without changing clothes and asked appellant to sleep on the floor in the living room. Instead, appellant climbed into bed with her. Initially, this did not bother SPC BN. Shortly thereafter, however, and while SPC BN was still awake, appellant abruptly pushed his hand down the back of SPC BN's pants and digitally penetrated her vagina. She testified that she "immediately told him to stop" and "pushed his hands away." Specialist BN then went to sleep and remained sleeping until she was awoken by a sharp pain when appellant penetrated her anus with his penis. Specialist BN testified at trial that appellant's conduct "bothered" her and that "it was wrong because he never asked me . . . there was no even [sic] indication that he wanted to be physical with me." Specialist BN stated that, although she was "extremely" intoxicated, she had no issues with memory.

In his first assignment of error, appellant asserts that Specifications 2 and 3 of Charge II are legally insufficient as there is no legally competent evidence that SPC BN was substantially incapacitated at the time of the offense. We agree.

---

[1] In appellant's third assignment of error—asserted in a headnote pleading—he raises the issue of whether there was sufficient corroboration of his admissions admitted by the government at trial. We find sufficient corroboration. Even assuming error, given that there was no objection or motion on the lack of corroboration, any error did not amount to plain error. *See United States v. Semeniuk-Hauser*, ARMY 20110976, 2014 CCA LEXIS 220, at *8-9 (Army Ct. Crim. App. 31 Mar. 2014) (mem. op.). Appellant personally raised two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), neither of which merits relief.

The Supreme Court stated in *Jackson v. Virginia* that when reviewing for legal sufficiency of the evidence, "the relevant question" an appellate court must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979); *see United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011).

Specifications 2 and 3 of Charge II, respectively, alleged that appellant penetrated and touched SPC BN's genital opening while she was "substantially incapacitated."[2] Under the law applicable at the time of this offense, as instructed by the military judge, substantially incapacitated "means that level of mental impairment which rendered the alleged victim unable to appraise the nature of the sexual conduct at issue, unable to physically communicate unwillingness to engage in the sexual conduct, or otherwise unable to make or communicate competent decisions."[3]

At trial, SPC BN presented, through her testimony, the only evidence concerning capacity to consent at the time appellant reached his hands down her pants. Applying the definition of "substantially incapacitated" to the testimony of SPC BN requires answering three questions. First, was SPC BN aware of the nature of the sexual conduct at issue? Specialist BN testified that she knew "immediately" what was happening to her. Second, was SPC BN able to physically communicate her unwillingness to engage in the sexual conduct? Specialist BN testified that she was able to physically communicate her unwillingness and did just that by moving appellant's hand away. Third, was SPC BN able to otherwise make and communicate competent decisions? Specialist BN's testimony clearly indicates she was able to make and communicate competent decisions and, in fact, did so by telling appellant to "stop." There is no evidence in the record that SPC BN, at the time of *these* offenses, was substantially incapacitated.[4] In short, while SPC BN

---

[2] In his second assigned error, appellant correctly notes that the promulgating order failed to reflect that the military judge ordered that Specifications 2, 3, and 4 of Charge II be merged *for findings*. Our action to dismiss Specifications 2 and 3 of Charge II renders this issue moot and therefore requires no corrective action on our part.

[3] *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-64-6.*d.* (1 Jan. 2010); *Manual for Courts-Martial, United States* (2012 ed.), Punitive Articles Applicable to Sexual Offenses Committed During the Period 1 October 2007 Through 27 June 2012, app. 28, at A28-4.

[4] As we find the evidence legally insufficient, we specifically do not reach the issue of factual sufficiency.

gave legally sufficient testimony that appellant committed an aggravated sexual assault by bodily harm when he abruptly penetrated her vagina with his finger, this was not the theory with which appellant was charged. *See United States v. Lubasky*, 68 M.J. 260, 261 (C.A.A.F. 2010) ("variance occurs at trial, not the appellate level").

## B. *Challenges for Cause*

Although not raised by appellant as an assigned error, we find the conduct of the military judge during voir dire to be worthy of discussion. We conclude the military judge erred during the course of voir dire by: a) granting a government challenge for cause; and b) asking the defense counsel whether they intended to use a peremptory challenge on an enlisted member before ruling upon a challenge for cause of an enlisted member.

### 1. *Government Challenge for Cause*

After group and individual voir dire, the military judge granted the single challenge for cause raised by the government and three challenges for cause raised by the defense. The government's challenge of Command Sergeant Major (CSM) ER warrants discussion here.

During voir dire, CSM ER revealed that about a month prior to appellant's court-martial, CSM ER had testified as a character witness for the defense in an unrelated court-martial.

The military judge conducted the initial individual voir dire of CSM ER. In response to the military judge's questions, CSM ER stated that he could approach appellant's case with an open mind, be objective, and that each case is unique.

The government, during its individual voir dire, queried CSM ER concerning the allegations for which he provided character evidence. Sergeant Major ER related that the accused in that case was "his soldier," and that the charges involved an alleged sexual assault at his soldier's residence. He further stated that he knew the accused in that case "very well" and that the allegations "couldn't have been true." Sergeant Major ER testified for his soldier after being told he was "a key witness that may affect the outcome of the court-martial." When asked if he believed there was any merit to the charges against his soldier, he responded as follows:

> Well, sir, based on my beliefs of the [s]oldier, I find - - I found it hard to believe that he would do something like that. However, I did understand it could happen. Okay, and I didn't doubt that. But my own feelings, because I know the [s]oldier. I had done duty with him for four years and he's probably one of the only specialists in the

> United States Army at that time that had a Top Secret
> clearance to be involved with the Homeland Security and
> the top needs of the Army. So I would tell you I knew the
> [s]oldier like I knew one of my kids. So my own personal
> belief at that time was that I didn't believe it.

The defense did not conduct an individual voir dire of CSM ER. Although never directly asked, the totality of CSM ER's responses during voir dire indicated he never had first-hand knowledge of the allegations against his soldier.

Upon completion of the voir dire of the members, the government challenged CSM ER for cause based on his previous experience as a character witness. The defense opposed the challenge. In response to a question from the military judge, the defense acknowledged their case would include a "good soldier defense."

The military judge granted the government's challenge for cause, ruling that there was a danger that CSM ER would give too much weight to character evidence and that his objectivity could be reasonably questioned. The military judge explained his reasoning as follows:

> Well, in light of the fact that [CSM ER] indicated he
> perceived himself to be a key witness as a character
> witness and that he believed that, in his capacity as a
> character witness, that his testimony would affect the
> outcome, that was his perception; and that without specific
> knowledge of the facts, he didn't believe it happened
> based solely on character. I think there is a significant
> potential that he, the sergeant major, under the
> circumstances, might view character evidence testimony in
> a way that would reasonably call into question his
> objectivity.

The military judge granted the challenge for cause. The government did not exercise a peremptory challenge as allowed under Article 41(b)(1), UCMJ.

"We give a military judge great deference [in deciding challenges for cause] because we recognize that he has observed the demeanor of the participants in the voir dire and challenge process. Because we give the military judge great deference, we will overturn his ruling on a challenge only if we find a clear abuse of discretion." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993).

In accordance with *White*, we give significant weight to a military judge's personal evaluation of a member. Whether a challenge is granted will often turn not so much on the words the member says, but the candor and confidence (or lack thereof) with which the words are uttered. Here, however, our concern is not the

5

military judge's personal assessment of the member's fitness, but rather that the military judge had a mistaken view of the law when granting the challenge for cause.

"Character evidence may itself generate reasonable doubt in the factfinder's mind." *United States v. Vandelinder*, 20 M.J. 41, 47 (C.M.A. 1985) (citing *Michelson v. United States*, 335 U.S. 469 (1948)). Under the rules of evidence in effect at appellant's trial, evidence of good military character was admissible to show the probability of innocence.[5] *Id*.; *see* Military Rule of Evidence [hereinafter Mil. R. Evid.] 404(a)(1). The military judge on the other hand, was concerned that CSM ER thought someone was not guilty based solely on an evaluation of character. The military judge also appeared to find a contradiction in that a "key" witness could be a character witness. The military judge's reasoning was inconsistent with the allowable range of weight that character evidence could have been given at that time.

Notwithstanding the military judge's error in granting the challenge for cause against CSM ER, however, any error was harmless beyond a reasonable doubt. The exclusion of a qualified member (as would be the case here) is not presumptively prejudicial. *See, e.g., United States v. Bartlett*, 66 M.J. 426 (C.A.A.F. 2008) (exclusion of whole classes of qualified members found not to be prejudicial). When a military judge errs in granting a government challenge for cause, we test for prejudice. *See United States v. Howard*, No. 36466, 2008 CCA LEXIS 234, at *5 (A.F. Ct. Crim. App. 25 Jun. 2008) (unpub.) ("A military judge's denial of a challenge for cause is reviewed for abuse of discretion. If there is error, we must then determine whether it was prejudicial.") (internal citations omitted); *United States v. Miller*, No. 200401906, 2007 CCA LEXIS 231, at *8 (N-M. Ct. Crim. App. 29 Jun. 2007) (unpub.) (testing for prejudice when the military judge mistakenly applied the liberal grant mandate to a government challenge); *United States v. Record*, No. 20130721, 2015 CCA LEXIS 319, at *12-13 (Army Ct. Crim. App. 31 Jul. 2015) (mem. op.). In *United States v. Dockery*, our sister court analyzed the difference between error caused by: a) the presence of a biased member on a panel; b) the improper exclusion of a member because of discrimination on the basis of race; and c) the improper exclusion of a member for non-discriminatory reasons. No. 38624, 2015 CCA LEXIS 540, at *11-13 (A.F. Ct. Crim. App. 2 Dec. 2015) (unpub.). Our sister court found the first two errors to be structural, but did not find

---

[5] The National Defense Authorization Act for Fiscal Year 2015 required, within 180 days of passage of the act, an amendment to Mil. R. Evid. 404(a) to provide that the general military character of an accused is not admissible for the purpose of showing the probability of innocence with respect to violations of certain articles, to include Article 120, UCMJ. Pub. L. No. 113-291, § 536, 128 Stat. 3292, 3369 (2014). The President implemented this directive on 22 June 2015. Exec. Order No. 13,696, 80 Fed. Reg. 35,783 (Jun. 22, 2015).

structural error when a member is improperly excluded for a reason other than discrimination. We agree with the Air Force court's analysis.

Reviewing the record, we are unable to find any prejudice to appellant based on the exclusion of CSM ER from the panel. In addition to finding no prejudice, we note that the government did not exercise a peremptory challenge. That is, had the military judge not granted the government's challenge for cause, the government could have exercised their peremptory challenge to remove CSM ER from the panel.

### 2. *Defense Challenges for Cause*

Our next concern is that the military judge appeared to condition his granting of the defense's third challenge for cause on whether the defense would exercise their peremptory challenge against an enlisted member.

The military judge entertained three challenges for cause raised by the defense. Three enlisted members and four officer members remained on the panel after the military judge granted the first two defense challenges. Before ruling on the defense counsel's third challenge for cause against Sergeant Major (SGM) JM, the following colloquy occurred between the military judge and the defense counsel:

> MJ: All right. And defense, do you intend to exercise a peremptory challenge against any other enlisted member?
>
> DC: I do not know at this time, Your Honor.
>
> MJ: Well, I need to know that before I can make my determination.
>
> DC: No, Your Honor, the defense would not be using its peremptory challenge against any other enlisted member.

The military judge then granted the challenge for cause against SGM JM. The defense then exercised their peremptory challenge on Lieutenant Colonel (LTC) DW.[6]

---

[6] The military judge asked the defense to exercise their peremptory challenge before asking the government. *See* R.C.M. 912(g)(1) ("Ordinarily, the trial counsel shall enter any peremptory challenge before the defense"). When the military judge then asked the government if there were any peremptory challenges, he also reminded them of the quorum and ratio requirements. The government chose not to exercise a peremptory challenge.

Had the defense exercised their peremptory challenge on an enlisted member, the court-martial would have fallen short of the one-third enlisted requirement of Article 25(c)(1), UCMJ, and triggered a delay in order for the convening authority to detail additional enlisted members. *See generally* UCMJ art. 29 ("Absent and additional members").[7]

When a military judge considers a defense challenge for cause, the military judge's ruling must be based on legal norms, not procedural or practical concerns. Upon a showing of actual or implied bias (and taking into account the liberal grant mandate), a defense challenge for cause should be granted without regard to whether there are sufficient members remaining. In other words, the umpire must call the pitch as it crosses the plate. A strike is a strike—no matter what inning; no matter the score.

Here, the military judge appeared to consider the defense's choice of peremptory challenge when ruling on a challenge for cause. Specifically, he stated that he "need[ed] to know" whether the defense would use a peremptory challenge against an enlisted member before he could "make [a] determination" on the challenge for cause.

This was error. As there was no objection at trial, we test for plain error and also find the error to be clear and obvious. However, we do not find substantial prejudice to a material right of appellant. *See United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). The military judge granted every defense challenge—whether for cause or peremptory. With the exception of the single member challenged by the government,[8] the panel that heard appellant's case was exactly the panel that the defense had shaped. Accordingly, while we find this error worthy of discussion, we do not order any relief. *See* UCMJ art. 59(a) ("A finding or sentence of a court-martial

---

[7] We find that the defense counsel was candid in her response to the military judge's question. That is, the defense did not intend to use their peremptory challenge on an enlisted member. Were it otherwise, we would be required to assume: 1) the counsel's answer lacked candor; and 2) that counsel did not act in her client's best interest when she elected to use the peremptory challenge on LTC DW. Additionally, we note that while the post-trial matters submitted by the defense counsel pursuant to Rule for Courts-Martial [hereinafter R.C.M.] 1105 included an allegation that the military judge was improperly focused on the court-martial quorum requirements, the defense did not raise any allegation that their exercise of the peremptory challenge had been improperly influenced.

[8] While we discussed above the government's challenge for cause, we note again that the government has the statutory right for one peremptory challenge of a panel member. UCMJ art. 41(b)(1).

may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused").

## CONCLUSION

The findings of guilty to Specifications 2 and 3 of Charge II are set aside and those specifications are DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In conducting a sentence reassessment, a Court of Criminal Appeals must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, [and] that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Sales,* 22 M.J. at 307-08 (quoting *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)). "[I]f the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error. . . ." *Sales*, 22 M.J. at 308.

In evaluating the *Winckelmann* factors, despite dismissing Specifications 2 and 3 of Charge II, there is no dramatic change in the penalty landscape, as appellant faced the possibility of life without parole based solely upon his conviction for forcible sodomy. Second, although appellant was sentenced by a panel of officer and enlisted members, we have experience dealing with cases involving sexual crimes. We are convinced that, absent the error at trial, the panel would have sentenced appellant to at least the sentence adjudged. Third, the gravamen of the criminal conduct within the original offenses remains substantially the same. Appellant remains convicted of forcible sodomy, aggravated sexual assault, and wrongful sexual contact, all stemming from the same series of events that included the conduct underlying the dismissed specifications. Thus, neither the penalty landscape nor the vast majority of admissible aggravation evidence has significantly changed. Finally, we have the familiarity and experience with the remaining offenses and can reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted errors and the entire record, we AFFIRM the approved sentence of a dishonorable discharge, confinement for twenty-three months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the

findings set aside and dismissed by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge HAIGHT, Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court