UNITED STATES, Appellee,

v.

Troy M. WILLARD, Specialist,
U.S. Army, Appellant.

No. 97–0562.
Crim.App. No. 9501598.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 13, 1998.

Decided June 15, 1998.

For Appellant: *Captain T. Michael Guiffre* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Michael L. Walters,* and *Major Holly S.G. Coffey* (on brief); *Major Michael E. Hatch* and *Captain Norman R. Zamboni.*

For Appellee: *Captain Steven H. Levin* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch III,* and *Major Lyle D. Jentzer* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of five specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The adjudged and approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed only so much of the findings of guilty as found that appellant committed wrongful appropriation as to each specifi-

cation. The court reassessed and affirmed the sentence.

This Court granted review of the following issue:

WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT THE FINDINGS THAT APPELLANT WAS GUILTY OF WRONGFUL APPROPRIATION WHERE APPELLANT WAS GRANTED A GENERAL POWER OF ATTORNEY.

We resolve this issue against appellant.

On January 15, 1995, Private First Class (PFC) Scott Clare deployed with his unit to Haiti. Before deploying, PFC Clare asked appellant, his roommate, if he would pay his bills and send him his leave and earnings statements (LES). Because PFC Clare's on-post check writing privileges were suspended, he was required to pay his telephone bills, his Army and Air Force Exchange Service (AAFES) bills, and his Naval Exchange (NEX) bills in cash. He gave appellant a folder with detailed instructions, including the amounts and dates for payment. He notified his creditors that appellant would be paying his bills, and he gave appellant a general power of attorney.

PFC Clare testified that he initially wanted a special power of attorney, but he was advised that he needed to give appellant a general power of attorney. PFC Clare also gave appellant his automatic teller machine (ATM) card so that appellant could obtain cash to pay the bills. He told appellant to send him the ATM receipts and LESs so that he could balance his checkbook. PFC Clare also told appellant, "If you do, for some reason, happen to get low on cash, you know, and you need some money, you need cigarettes or something, go ahead and go into the account and take some money out as long as you send me the receipt and pay it back, so I know about it and I can balance my checkbook." PFC Clare testified, "I didn't tell him, you know, go out to the bars and go out and get blitzed on the money."

In February 1995, PFC Clare wrote two checks for small amounts to a portable post exchange in Haiti. On February 23, 1995, both checks were dishonored for insufficient funds, and PFC Clare was notified of the dishonor. PFC Clare called his wife and asked her if she had withdrawn money from his account. She said that she had not. She investigated and then informed PFC Clare that someone else had withdrawn $1,050.00 from the account. PFC Clare was unable to contact appellant, but he contacted Specialist (SPC) Hoover, his other roommate, and told him that "a lot of money" was missing from his account. Specialist Hoover responded that "we only took out $302.00 out of the account to pay your bills." PFC Clare then reported the missing money to a military police investigator in Haiti.

On March 21, 1995, appellant deposited $400.00 in PFC Clare's account. On March 25, 1995, PFC Clare revoked the power of attorney. On the day PFC Clare returned from Haiti, he received two cashier's checks for $325.00 each from appellant.

Appellant made no payments on PFC Clare's bills. PFC Clare received no ATM withdrawal receipts from appellant while he was deployed in Haiti.

On March 30, 1995, a military police investigator interviewed appellant about his use of PFC Clare's ATM card. Appellant admitted using PFC Clare's money to buy alcohol and go to clubs. He admitted that he had not paid any of PFC Clare's bills.

The military judge convicted appellant of larceny. At defense request, he recited on the record that he convicted appellant on a theory of "wrongful withholding with intent permanently to appropriate, which in essence was formerly known as the crime of embezzlement." The Court of Criminal Appeals affirmed only the lesser-included offense of wrongful appropriation for each specification.

■ Appellant now contends that the evidence is legally insufficient to support his conviction of wrongful appropriation because his use of the money did not exceed the scope of his authority. He asserts that PFC Clare did not limit the amount of money he could borrow, did not specify the payment terms, and did not limit the uses to which any money borrowed could be devoted. Furthermore, he argues that there is no evidence that appellant failed to return, account for, or

deliver the money to PFC Clare when it was due. Finally, he argues that there is no evidence of *mens rea* because appellant honestly believed he had PFC Clare's consent to use the money.

The Government argues that there is sufficient evidence to support a conviction of wrongful appropriation under an embezzlement theory, because appellant converted the money to purposes well beyond the scope of the owner's permission.

■ The test for determining whether the evidence is legally sufficient is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 MJ 324 (CMA 1987), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The first element of larceny under Article 121 is "[t]hat the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person." Para. 46b(1)(a), Part IV, Manual for Courts–Martial, United States (1995 ed.). Article 121 encompasses common-law larceny, false pretense, and embezzlement. Para. 46c(1)(a). The Manual further provides the following:

A "withholding" may arise as a result of a failure to return, account for, or deliver property to its owner when a return, accounting, or delivery is due, even if the owner has made no demand for the property, or it may arise as a result of devoting property to a use not authorized by its owner. Generally, this is so whether the person withholding the property acquired it lawfully or unlawfully.

Para. 46c(1)(b).

■ A power of attorney is not a license to embezzle. The power of attorney may convey apparent authority *vis-a-vis* an innocent third party, but it does not empower the grantee to exceed the terms of his or her actual authority. Of course, if there is a dispute about what actual authority was granted, the written power of attorney may be consulted to resolve that dispute. In this regard we agree with this analysis by the Supreme Court of New Jersey:

[A] power of attorney of course is not an instrument of gift. In itself, it is no more than the term, power of attorney, imports—an authorization to the attorney to act for the principal. Although as between the bank and the principal, the bank was relieved ... of a duty to inquire as to whether any withdrawal was in the agent's interest rather than the principal's, the instrument did not authorize the agent to make off with the principal's money. In short, the instrument was the means whereby the agent was able to get his hands on the moneys, but when the moneys were thus obtained, the agent received them as agent for the principal, and the fraudulent appropriation of the moneys thus obtained to his own use constituted embezzlement.

*State v. Kennedy*, 61 N.J. 509, 296 A.2d 65, 66–67 (1972). Because appellant had a power of attorney, PFC Clare's creditors had no duty to challenge appellant's authority to pay PFC Clare's bills; and the bank had no duty to challenge appellant's authority to withdraw money from PFC Clare's account; but still appellant had no license to embezzle the money.

Since appellant did not testify, the military judge had only PFC Clare's description of his instructions to appellant. He testified that he expected appellant to pay the telephone bill, the AAFES bill, and the NEX bill. He gave appellant permission to borrow money from the account if he was "low on cash" and needed money for "cigarettes or something," provided that appellant sent the withdrawal receipts to PFC Clare and repaid the money.

When appellant was confronted by a military police investigator after PFC Clare complained, he admitted that he paid none of the bills, sent no receipts, and spent over $1,000.00 on alcoholic beverages and clubs. Appellant made no effort to carry out PFC Clare's instructions. He made no effort to account for the money. He did not begin to repay the money until March 21, 1995, after PFC Clare complained to SPC Hoover, PFC

Clare's wife called the unit and asked what had happened to her husband's money, and PFC Clare reported the missing money to a military police investigator.

Appellant failed to comply with PFC Clare's instruction to send him the ATM withdrawal receipts and repay any money borrowed from the account. He ignored the primary purpose of the power of attorney, which was to enable him to pay PFC Clare's bills. Instead, he virtually depleted PFC Clare's bank account to buy alcoholic beverages and frequent bars and clubs. On this record, "a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner, supra.*

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

SULLIVAN, Judge (dissenting):

Similar cases should be resolved in a similar manner. This case should be decided in appellant's favor on the basis of this Court's decision in *United States v. Hughes,* 45 MJ 137 (1996). There, Judge Robertson, writing for a majority of this Court, held that the "from the possession of" element of wrongful appropriation is not satisfied as a matter of law where other than a fiduciary relationship exists and a change of possession lawfully occurred prior to the charged act. Here, the uncontroverted evidence of record shows appellant had a general power of attorney over PFC Clare's funds, as well as oral discretionary authority to apply those funds to his own use.

The power of attorney permitted appellant to

lease, sell, use, establish title to, register, insure, transfer, mortgage, maintain, manage, pledge, exchange or otherwise dispose of or encumber any and all of [PFC Clare's] property, real, personal, or mixed....

Additionally, the power of attorney allowed appellant to

demand, act to recover, and receive, all sums of money which are now or will become owing or belonging to [PFC Clare], and to institute accounts on [PFC Clare's] behalf, and to deposit, draw upon, or expend such funds of [PFC Clare] as are necessary in furtherance of the powers granted herein. This shall include, but not be limited to, the authority to receive, endorse, cash, or deposit negotiable instruments made payable to [PFC Clare], and drawn upon the Treasurer, or other fiscal officer or depository, of the United States.

Finally, the general power of attorney contained a catch-all phrase which provided that the "described powers are merely examples of the authority granted by this document and not in limitation or definition thereof." In my view, this legal document indicates that a lawful change of possession of PFC Clare's bank funds occurred.

I note further that other evidence of record suggests appellant did not have a strict fiduciary relationship towards PFC Clare's money. PFC Clare testified that he gave appellant oral permission to withdraw money from his bank account for some personal use and placed no limit on the amount of money appellant could borrow. PFC Clare testified:

A. ... I had stated that he could, if he was low on cash, borrow money. I used the example for food, cigarettes and stuff like that.

Q. And did you give him any other instructions about what he couldn't use it for?

A. Not really, ma'am. I just gave him—I just let him know that if he did need money that he could borrow some as long as he paid it back.

Q. Did you say anything to him about letting you know?

A. Yes, ma'am. That if he did to, again, take the receipts from the ATM and send them to me.

Q. Now, tell the military judge exactly what you told him, using the examples that you used, as if the military judge is Specialist Willard.

A. Yes, ma'am. Go ahead—I need my bills paid. You know that they need to

[be] paid in cash on certain days. If you do, for some reason, happen to get low on cash, you know, and you need some money, you need cigarettes or something, go ahead and go into the account and take some money out as long as you send me the receipt and pay it back, so I know about it and I can balance my checkbook.

Thus, the problem with the opinion of the majority is that our decision in *Hughes*, plus the facts of this case (a general power of attorney and a verbal authorization to use PFC Clare's funds anytime as a personal loan) negate the wrongful taking element and the intent element of the charged crime. It was very telling at oral argument when the Government could not state the exact moment of the crime. One should always be able to define when a crime occurred.

In addition, Investigator Ivanoff, a government witness, testified that appellant told him he intended to pay the money back at the time he withdrew it from PFC Clare's account. Furthermore, although PFC Clare required appellant to give an accounting for the amount of money he borrowed, and ap-

pellant failed to do so, PFC Clare neither "put a cap" on the amount appellant could borrow nor indicated a due date for the accounting. Finally, appellant never attempted to conceal the fact that he borrowed money from PFC Clare's bank account, and he repaid all the money due by the time PFC Clare returned from Haiti. *See* para. 46c(1)(f)(ii), Part IV, Manual for Courts–Martial, United States (1995 ed.).

These facts suggest to me that appellant's acts were not wrongful as a matter of law, and that he did not intend to steal any money from PFC Clare. *Cf. United States v. Harville,* 14 MJ 270, 271 (CMA 1982)(mere borrowing of an item without prior consent of the owner does not *per se* constitute wrongful appropriation absent criminal intent). The powerful horse of *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), that the majority attempts to ride to an affirmance in this case has two legs (or elements of the charged crime) missing. Accordingly, I dissent from the majority's upholding of a conviction which is contrary to established legal precedent of this Court.