# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant MAURICE N. JOHNSON**
**United States Army, Appellant**

ARMY20160245

Headquarters, United States Army Training Center and Fort Jackson
Edye L. Moran and Robert A. Cohen, Military Judges
Lieutenant Colonel Robert L. Shuck, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Patrick J. Scudieri, JA; Captain Joshua G. Grubaugh, JA (on brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Marc B. Sawyer, JA (on brief).

17 April 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

There is no dispute that appellant exceeded his authority and used his Government Purchase Card (GPC) several different times to make purchases of riding lawnmowers or televisions that each exceeded $500. He then sold these items for his own benefit. For these actions appellant pleaded guilty to four specifications of larceny amongst other crimes. Relying on our superior court's credit card transaction jurisprudence, appellant asserts the military judge abused his discretion by accepting the guilty pleas to the larceny charges and specifications without a factual record of the indemnification agreement between the U.S. Army and the bank that issued the GPC. We disagree because appellant was an authorized user of the GPC, vesting legal title of the items in the Army at the point of sale. The government, therefore, appropriately charged appellant's theft as a "taking" of the items from the U.S. Army.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of four specifications of larceny, wrongful sale of military property, willful dereliction of duty, and three specifications of false official statements, in violation of Articles 92, 107, 108, and 121 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 907, 908, and 921. The convening authority approved the adjudged sentence to a bad-conduct discharge.

This case is before us for review pursuant to Article 66, UCMJ. After reviewing the entire record and all the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), we find no substantial basis in law or fact to question any of appellant's pleas.[1]

## BACKGROUND

Prior to the charged offenses, appellant served as a supply specialist for approximately fifteen years and was assigned as the non-commissioned officer in charge (NCOIC) of his unit's supply room at Fort Jackson, South Carolina. Part of appellant's duties included serving as a GPC holder. Prior to becoming a GPC holder, appellant completed the DoD Government Purchase Card Course from the Defense Acquisition University and attended the Government International Merchant Purchase Authorization Credit Card course. In order to become a "GPC super card purchaser," appellant attended more advanced training for the U.S. Bank Corporate Payment Systems. These courses informed appellant of his duties and responsibilities as a GPC holder. This included his duty to add property purchased through the GPC to the unit property book.

### A. The Scheme

Appellant purchased thirteen riding lawnmowers using the unit's GPC. The lawnmowers were valued at a total of approximately $33,300.00. After making the purchases, appellant falsely listed the purchases as "supplies," "parts," and "folding tables" on the unit's credit-card-log-sheets. He also submitted forged receipts to the

---

[1] One of the matters appellant asserts in his *Grostefon* matters is that his sentence, consisting solely of a bad-conduct discharge, is inappropriately severe because of his loss of retirement benefits and possible effect of the punitive discharge on his medical and mental health care from the Veteran's Administration. Appellant's sentence included no confinement, no fine, no reduction in rank, and no forfeiture of pay and allowances. Considering the entire record, to include appellant's military and disciplinary record, we do not find appellant's lenient sentence to be inappropriately severe. Appellant's rank, seniority, experience, and misuse of his position aggravated his crimes.

unit. Appellant never listed the lawnmowers on the unit's property book or brought the items to the unit. Instead, he sought buyers to purchase the lawnmowers at a price lower than the retail price. In the stipulation of fact, appellant admitted to selling all the lawnmowers and pleaded guilty to separately selling one of the lawnmowers to an unknown male.

Appellant also purchased three high-definition televisions using the unit's GPC. The televisions were valued at a total of approximately $4,170.00. After making the purchases, appellant falsely listed the purchases as "All-In-One Printr [sic]" on the unit's credit-card-log-sheets and again submitted a forged receipt to the unit. He never listed the televisions on the unit's property book or brought the items to the unit. In the stipulation of fact, appellant admitted to selling the televisions, including selling one of them to a sergeant in his unit for $400.

### B. The Investigation

In 2015, a unit audit revealed that over a twelve-month period appellant was using the unit GPC to purchase a number of expensive items, misrepresenting the type of purchases to the unit, failing to list the items on the unit property book, and keeping the items for his own benefit. A criminal investigation revealed appellant had sold the property and retained the proceeds for his personal use.

At trial, among other charges, appellant pleaded guilty to stealing U.S. Army property (lawnmowers and televisions) by making purchases with the unit GPC. For each of the above purchases, appellant admitted that the U.S. Army had a greater "ownership" and "possessory right" to the property and that the purchased items were the property of the U.S. Army.

## LAW AND DISCUSSION

On appeal, appellant asserts "the military judge abused his discretion by accepting a plea that does not have a substantial basis in fact because the U.S. Army was not the larceny victim." Appellant asserts that the record had nothing to support that the U.S. Army had a contractual relationship to indemnify the merchants or the bank for appellant's GPC purchases. According to appellant, the military judge erred by focusing on whether the U.S. Army had greater ownership in the property appellant purchased. Appellant relies on our superior court's holding in *United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010), and *United States v. Williams*, 75 M.J. 129 (C.A.A.F. 2016), for the rule that the proper victim in a credit card theft case is usually the merchant. On the other hand, citing the Court of Appeals for the Armed Forces' (CAAF's) cases of *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014), and *United States v. Ragins*, 11 M.J. 42 (C.M.A. 1981), the government argues appellant's agency relationship with the U.S. Army and misuse

3

of a GPC support appellant's larceny convictions and guilty pleas with the U.S. Army as the victim.

## A. *Standard of Review*

"We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." *United States v. Simpson*, __ M.J. ___, 2018 CAAF LEXIS 176, *5 (C.A.A.F. 2018) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A guilty plea will only be set aside if we find a substantial basis in law or fact to question the plea. *Id.* at *6 (citing *Inabinette*, 66 M.J. at 322). We apply the "substantial basis" test to determine whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Inabinette*, 66 M.J. at 322; *see also* UCMJ art. 45(a); Rule for Courts-Martial [R.C.M.] 910(e). This court does not review guilty pleas for factual and legal sufficiency. *United States, v. Cowan*, ARMY 20160031, 2017 CCA LEXIS 633, *5-9 (Army Ct. Crim. App. 28 Sep. 2017) (mem. op.).

Where an appellant pleads guilty, "the issue must be analyzed in terms of providence of his plea, not sufficiency of the evidence." *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996); *see also United States v. Barton*, 60 M.J. 62, 64 (C.A.A.F. 2004).

> Article 45(a), UCMJ, 10 USC § 845(a), requires that a military judge set aside a guilty plea if an accused "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect." [R.C.M.] 910(e), Discussion, Manual for Courts-Martial, United States (1995 ed.), requires that the military judge explain the elements of the offense and ensure there is "a factual basis for the plea." Then, "*the accused must be convinced of, and able to describe all the facts necessary to establish guilt*." [R.C.M.] 910(e), Discussion.
>
> There is no requirement "that any witness be called or any independent evidence be produced to establish the factual predicate for the plea." The factual predicate is sufficiently established if "the factual circumstances as revealed by the accused himself objectively support that plea . . . ." *United States v. Davenport*, 9 [M.J.] 364, 367 ([C.M.A.] 1980).

*Faircloth*, 45 M.J. at 174 (Emphasis added).

In considering appellant's assigned error, this court will review our superior court's reasoning in several credit card larceny cases, appellant's actual providence inquiry, and the military judge's explanation of the elements of the offense to determine if there was an abuse of discretion by the military judge in accepting appellant's guilty plea.

## B. Credit Card Larceny Offenses

Our superior court recently reiterated that "[w]hen an accused engages in a wrongful 'credit, debit, or electronic transaction,' this usually constitutes either 'a larceny of those goods from the entity from the merchant offering [the goods]' or 'from the entity presenting the money.'" *Simpson*, __ M.J. ___, 2018 CAAF LEXIS 176, at *6 (citations omitted).

However, "[a]lternative charging theories are also available," as long as "the accused wrongfully obtained goods or money from a person or entity with a superior possessory interest." *Manual for Courts-Martial*, *United States*, Analysis of Punitive Articles app. 23 at A23-17 (2012 ed.). "The relevant question in determining the person to name in a larceny specification is *whom* did the accused steal the goods or money *from*?" *Williams*, 75 M.J. at 132.

*Cimball Sharpton* was a contested case in which the CAAF held that the U.S. Air Force was a properly named victim in the larceny of money, when the appellant exceeded the scope of her GPC authority and misused her GPC by purchasing unauthorized items. 73 M.J. at 301-02. As part of this decision the CAAF relied on the stipulation by the accused in *Cimball Sharpton* that the Defense Finance and Accounting System paid the GPC bank the full amount owed for the unauthorized charges. *Id.* at 301. The CAAF also noted a U.S. Air Force Instruction required the government to pay for charges involving "misuse or abuse by the [GPC] cardholder." *Id.* at 301 n.2. Thus, the CAAF held because "[t]he Air Force suffered the financial loss . . . the government was correct in charging larceny from the Air Force." *Id.* at 302. In other words, since the vendor and issuing bank were fully compensated by the U.S. Air Force through the agreement, the U.S. Air Force was the only entity that actually suffered any financial loss.

In *Williams*, the CAAF clarified its holding in *Cimball Sharpton* stating "the Air Force was an appropriate person to allege in the larceny specification because it was an entity from whom the appellant wrongfully obtained goods or money." 75 M.J. at 134. The CAAF then noted that while the government in *Cimball Sharpton* charged the larceny of money from the Air Force, "it seems the better charging theory would have been that she stole the particular items by exceeding her actual authority and keeping the items that were in effect purchased by the Air Force for herself." *Id*. at 134 n.6.

The charging theory of stealing items rather than money from the U.S. Air Force may have been "the better charging theory" in *Cimball Sharpton* because it would not have required introducing the relationships of the banking institution as an intermediary between the U.S. Air Force and the vendor who ultimately received the funds. Under the "better charging theory," legal title to the items vested in the U.S. Air Force at the point of sale because the accused in *Cimball Sharpton* was an authorized user of the GPC. The accused in *Cimball Sharpton*, therefore, stole the particular items from the U.S. Air Force when she kept them for herself because at that point the U.S. Air Force owned them.

### C.  Appellant's Providence Inquiry

The military judge properly explained the elements of the offenses and elicited the factual basis to support appellant's pleas. In the case at bar, the government followed the "better charging theory" noted in *Williams*. As a result of this charging decision, the military judge appropriately focused the providence inquiry on whether the U.S. Army had greater ownership in the property than appellant.

During the providence inquiry, appellant explained to the military judge that he stole *from* the U.S. Army. Appellant agreed he was a GPC holder, that government funds were used through the GPC for the purchases, the government had the right of possession of the property, he had a duty to report the purchases to his command, and the property should have been listed on the unit property book. This is because—and the appellant agreed—the property actually belonged to the U.S. Army. Appellant then explained that he took the items for his own personal benefit.

Although appellant did not have authorization from his unit to purchase the lawnmowers or televisions, this inquiry is irrelevant to the key question identified in *Williams* of *from whom* the accused stole the goods or money. Appellant admitted he was a GPC holder. He was trained and authorized to use his unit's GPC. He properly signed the GPC purchase authorizations, and therefore accepted the property on behalf of the U.S. Army. Appellant also served as the NCOIC of his unit's supply room and made multiple other authorized GPC purchases from these and other vendors. What distinguished appellant's lawful GPC transactions from the thefts were his criminal actions *after* the sale by keeping the items for his own benefit, rather than listing them on the property book and placing them in the unit's actual possession.[2]

---

[2] To highlight this distinction, even if appellant did not have authorization to use his GPC to purchase the lawnmowers and televisions, there would have been no criminal theft offenses if he had properly delivered the items to the unit and reported the

(continued . . .)

6

Notably, appellant did not obtain the lawnmowers and televisions from the vendors through false pretenses. In fact, he did not make any false representations to the vendors. There would have been no reason for the vendors to challenge appellant's purchases. *See United States v. Willard*, 48 M.J. 147 (C.A.A.F. 1998) (bank had no duty to challenge appellant's authority to withdraw funds using a power-of-attorney and the proper victim was the account holder instead of the bank). From the vendor's perspective, appellant's authorized actions as an agent of the U.S. Army at the time of the purchases would have been no different than if he purchased the property with cash or a general power-of-attorney.

Appellant was aware of the limits of his GPC authority, exceeded that authority, and misused the GPC. Appellant ultimately accomplished the larcenies by keeping the lawnmowers and televisions that were in effect purchased by the U.S. Army for his own benefit. He then proceeded to conceal the thefts from detection by forging receipts from the vendors, failing to inform his command and property book officer of the purchases, falsely recording the GPC purchases on the log, and failing to list the actual items purchased on the unit property book.

Lastly, at both an R.C.M. 802 session and during a hearing on appellant's unreasonable multiplication of charges motion, the military judge confirmed that both parties still agreed the proper larceny victims were charged. The military judge stated that the defense counsel had convinced him that the one victim was the U.S. Army and both parties agreed that the U.S. Army was the "properly-named victim" of the larceny offenses. As a result, defense counsel persuasively argued that there was only one victim of the larcenies – the U.S. Army – and four specifications were merged for sentencing. This reduced appellant's exposure to confinement for those specifications from twenty years to five years.

The stipulation of fact and facts elicited by the military judge during the providence inquiry fully support the charges and specifications for which appellant pleaded guilty. It is also clear from the record that appellant understood the meaning and effect of his guilty plea. As the U.S. Army was the proper victim in this case, there is no substantial basis in fact or law to question the providence of appellant's plea. Therefore, the military judge did not abuse his discretion by accepting appellant's guilty pleas to the larceny charges and specifications.

---

(. . . continued)

purchases by recording them on the unit property book. This would have been a regulatory violation for an unauthorized purchase – but not a theft of U.S. Army property.

## CONCLUSION

Having found no substantial basis in law or fact to question appellant's pleas, and finding the sentence appropriate, the findings and sentence as adjudged and approved by the convening authority are AFFIRMED.

Senior Judge MULLIGAN concurs.

WOLFE, Judge, concurring:

I understand appellant's desire to see his case as the next in the line of confusing cases of electronic thefts so that he can then characterize the offense as being mischarged—and thereby invalidate a guilty plea. But, this is a case of theft by "taking," not a case of obtaining by false pretenses.

Appellant was charged with stealing lawnmowers and televisions. He was not charged with stealing "money." Appellant's crime would be no different had the Army provided him with an envelope of cash to make unit purchases instead of a credit card. In both instances, appellant would have bought lawnmowers and televisions for the U.S. Army. I would not evaluate this case under *Simpson, Lubasky, Cimball-Sharpton,* or *Williams,* just because, at one point, a credit card was used.

This was a theft by "taking" not a theft by obtaining through false pretenses. That was what was charged. Those were the actions to which appellant pleaded guilty. Given appellant's admitted facts at the providence inquiry there is no basis in law or fact to question the providence of his plea.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court