**UNITED STATES, Appellee,**

v.

**Sergeant Michael H. HUNT, 261–49–0553, United States Army, Appellant.**

**ACMR 9001263.**

U.S. Army Court of Military Review.

28 Feb. 1992.

---

For Appellant: Matthew R. McCrink, David P. Perri, Captain Holly Desmarais, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Thomas E. Booth, JAGC, Major Daniel N. Velling, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of rape, larceny, two specifications of assault, adultery, and three other specifications alleging misconduct discrediting to the armed forces, in violation of Articles 120, 121, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 921, 928, and 934 (1982), respectively. The court sentenced him to a dishonorable discharge, confinement for fourteen years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence.

■ The larceny and assault charges arose out of an incident that occurred on 6 July 1989, in which the appellant assaulted the wives of two soldiers and stole photographs from one of them. The appellant contends that the evidence is insufficient to establish these two charges. We disagree.

The appellant was a noncommissioned officer assigned to an ordnance training unit at Fort Dix, New Jersey. A trainee, Private T, asked him for assistance in obtaining on-post housing for Private T and his nineteen year-old-wife, Dionne, who was sharing a room at a local motel with another trainee's wife, Audra H, also nineteen. The appellant accompanied Dionne to her motel in order to examine certain documents belonging to Private T that would ostensibly have qualified him for on-post housing. Upon their arrival, Audra was in the motel room. Dionne showed the appellant a drawer full of papers and letters which he began to examine as he sat on one of the beds with Audra beside him. When Dionne went into the bathroom, the appellant suddenly pinned Audra to the bed, kissed her, placed his hand under her shorts and inserted his fingers into her vagina. Audra struggled to get away from the appellant but was not successful until he released her as Dionne exited the bathroom. Audra took Dionne outside the motel room, told her what had happened and the two decided to take the appellant back to post. When they reentered the room, the appellant grabbed Dionne by the arm, pulled her into the bathroom, and attempted unsuccessfully to kiss her. Dionne, accompanied by Audra, then drove the appellant back to post. During the drive, the appellant continually rubbed Audra's arm and asked her to go out with him.

The next day, the women reported the incident to the appellant's commander who notified the Criminal Investigation Command (CID). The commander also advised them to file a complaint with the New Jersey State Police. A CID agent escorted the women to the nearest state police headquarters where they filed their complaint. The appellant was called into the police headquarters, advised of his rights and made an exculpatory statement. After admitting that he went to the motel, he claimed that the women had enticed him to perform sexual acts with them by dancing and throwing nude photographs of themselves around the motel room. He produced two nude photographs of Dionne which he gave to the investigating officer. He said he took them from the room in case he was falsely accused of a sex offense by the women. Dionne testified that an envelope containing nude photographs of herself disappeared from the motel room after the appellant had been there. She indicated she made the photographs at the request of her husband and kept them in the same drawer as his papers. Both she and Audra denied the appellant's version of the incident. We are satisfied, as were the triers of fact, that the women's version of what happened was more credible than that reflected in the appellant's statement to the state police. Accordingly, the evidence is sufficient as a matter of law and fact to prove that the appellant committed the offenses beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

■ The appellant has also attacked his conviction of rape on the grounds that there was a fatal variance between the date alleged in the specification and the proof established at trial. He further contends that he was prejudiced as his alibi defense, which was rejected by the court-martial, related to the date alleged in the specification. The charge reflects that the rape was committed on 20 October 1989. The government's witnesses testified that it may have occurred as early as 21 September but was not reported until 20 October.[1]

The government argues that a variance between the date alleged and the date proven by the evidence is not fatal where time is not of the essence, does not change the nature of the offense, alter the maximum punishment, or offend notice or double jeopardy considerations. *United States v. Freeman*, 23 M.J. 531 (A.C.M.R.1986), *pet. denied*, 26 M.J. 290 (C.M.A.1988). We hold that the variance surrounding the rape charge in this case is not fatal when measured by the foregoing criteria. In the first place, a difference of four weeks is not sufficiently substantial to imply that

1. The trial was held ten months after the incident. This apparently affected the ability of witnesses to precisely remember the date the offense was committed.

the appellant was misled. *United States v. Dotson*, 27 C.M.R. 596 (A.B.R.1958). Second, there was more than ample evidence to establish that the appellant had notice of the specific incident to which the charge related to enable him to defend against it. Third, the finding is sufficiently accurate as to time to protect the appellant from another trial for the same offense. *United States v. Sell*, 11 C.M.R. 202 (C.M.A.1953). Finally, the appellant did not object or otherwise move for appropriate relief to complain about indefiniteness. Normally, this constitutes waiver. *United States v. Karl*, 12 C.M.R. 183 (C.M.A.1953).

The appellant also contends there was insufficient evidence to support his conviction of the specifications alleging discrediting conduct. The specifications alleged that appellant had discredited the service by violating three New Jersey criminal statutes by possessing an unlicensed handgun, possessing hollow-point bullets for the gun, and by driving a vehicle on a suspended license. We disagree in part.

On 15 October 1989, a New Jersey state trooper on patrol observed an automobile stopped on the shoulder of an interstate highway with its emergency signals flashing. There was no evidence that the vehicle's engine was running. The trooper stopped to render assistance. When he approached the vehicle, he observed three individuals asleep and an empty pistol holster on the rear seat. He confronted the appellant, who was in the driver's seat, and the appellant promptly admitted ownership of the holster. He further advised the trooper that he had a loaded nine-millimeter pistol in the car, that he was in "the military," and that he was authorized to carry the weapon by military authorities. The trooper seized the pistol, which was loaded, and an additional ammunition clip from the vehicle and directed the appellant to follow his patrol car to a police station.

Telephone calls to military authorities revealed that the appellant was not authorized to carry a pistol. A computer records check established that the appellant had not registered the weapon with the State of New Jersey. The bullets seized from the automobile included ball and hollow-point types. Further investigation revealed that the appellant's driver's license, issued by the State of Florida, had been suspended for nonpayment of traffic violations. In New Jersey, it is a crime to possess an unlicensed pistol and hollow-point bullets. New Jersey also proscribes driving on a suspended license.

We are mindful of the Court of Military Appeals' decision in *United States v. Sadler*, 29 M.J. 370 (C.M.A.1990), holding that servicemembers may not be found guilty of violating Article 134, UCMJ, solely because their conduct violates state law. Unless the acts are, by their nature, discrediting, the circumstances under which they were committed must be examined before such a determination may legitimately be made. *United States v. Davis*, 26 M.J. 445 (C.M.A.1988); *United States v. Lowe*, 16 C.M.R. 228 (C.M.A.1954); *United States v. Dallman*, 32 M.J. 624 (A.C.M.R.), *pet. granted*, 34 M.J. 15 (C.M.A.1991). Assuming, without deciding, that the appellant's acts are not inherently discrediting, we hold that his possession of an unregistered weapon and hollow-point bullets, in a vehicle on a public highway and in violation of New Jersey law, is discrediting to the armed forces under the circumstances of this case. *See United States v. Greene*, 34 M.J. 713 (A.C.M.R.1992). Although the appellant told the trooper about the pistol and bullets without first being asked, we conclude he took this action because he knew the holster had been discovered and there was a likelihood the trooper would discover the pistol and bullets through additional investigation. The appellant's misrepresentation to the trooper that he was authorized to possess the weapon by military authorities was a weak and abortive effort to deflect further inquiry into his misconduct. Such false assertion of a military justification for criminal behavior tends to reflect unfavorably upon the integrity of all servicemembers.

We need not decide whether appellant's alleged driving on a suspended license was discrediting under the circumstances. The

record failed to establish that the appellant was operating the automobile within the meaning of military law at the time he was confronted by the state trooper. Operating a vehicle means "setting of its motive power in action or the manipulation of its controls" to cause it to move. *See* Manual for Courts–Martial, United States, 1984, Part IV, para. 35(c)(2). The fact that the appellant was in the drivers' seat without the motor running is insufficient to establish that he was operating the vehicle.[2] Accordingly, we will dismiss this specification. In view of the insignificance of this offense relative to the others of which the appellant was convicted, we determine no sentence relief is warranted.

We have considered the matters submitted by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982) and find them to be without merit.

The court affirms only so much of the finding of guilty of the Specification of the Additional Charge as provides that the appellant engaged in conduct discrediting to the armed forces by possessing on a public highway an unlicensed, loaded handgun, and hollow-point bullets in violation of New Jersey state law. The remaining findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge GRAVELLE concur.

---

**2.** Although the appellant drove the vehicle to the police station, it was pursuant to the trooper's orders and this does not constitute a violation of the statute. *See* R.C.M. 916(d).