*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

―――――――――

## UNITED STATES
Appellant

**v.**

## John D. KERSHAW, Staff Sergeant
United States Air Force, Appellee

**No. 25-0177**
Crim. App. No. 40455

Argued January 13, 2026—Decided April 30, 2026

Military Judges: Brian C. Mason (motions), Dayle P. Percle (Article 30a proceedings), Lance R. Smith (motions and arraignment), Shad R. Kidd (trial on the merits), and Tiny L. Bowman (remand)

For Appellant: *Major Ashley T. Levine* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel Jenny A. Liabenow*, and *Mary Ellen Payne*, Esq. (on brief).

For Appellee: *Major Frederick J. Johnson* (argued); *Lieutenant Colonel Allen S. Abrams.*

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS and Judge JOHNSON joined. Judge MAGGS filed a dissenting opinion, in which Judge HARDY joined.

―――――――――

Chief Judge OHLSON delivered the opinion of the Court.

If at a court-martial there is a discrepancy between *any* of the facts pleaded by the government and the facts proven at trial, a service Court of Criminal Appeals (CCA) has the authority under the prior version of Article 66 of the Uniform Code of Military Justice (UCMJ)[1] to find the appellant's conviction to be factually insufficient. However, if there is a discrepancy between a fact pleaded by the government and a fact proven at trial—and if that fact is *not an integral part of an element of the charged offense*—a CCA has the alternative authority to conduct a variance analysis and test that discrepancy for prejudice. This holds true regardless of whether the trier of fact made exceptions and substitutions at trial. If the variance analysis reveals no prejudice to the appellant, the CCA may affirm the conviction on factual sufficiency grounds despite the discrepancy. Because in the instant case the Air Force CCA committed legal error by disclaiming the latter authority, we set aside the opinion below and remand the case for further review in accordance with this Court's opinion.

---

[1] Congress has altered the Article 66 factual sufficiency review of the CCAs, but these new standards apply only to cases where all findings of guilty are for offenses occurring after January 1, 2021. *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(b), (e)(2), 134 Stat. 3388, 3612-13 (2021). Congress has further changed the language of Article 66(d)(1), with the current version controlling those cases where all findings of guilty are for offenses occurring after December 27, 2023. *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(d)(1), (f), 135 Stat. 1541, 1703, 1706 (2021). Because the offenses here occurred no later than 2016, these changes do not apply. Accordingly, our opinion in this case need not and does not consider how the congressional amendments to Article 66 might affect the scope of a CCA's factual sufficiency review authority going forward.

## I. Factual and Procedural Background

The facts of this case are complicated.[2] In sum, the victim (FA) disclosed to a high school counselor that when she was considerably younger, Appellee (her uncle) intentionally exposed his genitalia to her and penetrated her mouth with his penis. Appellee was then charged with two specifications under Article 120b, UCMJ, 10 U.S.C. § 920b (2012), alleging he had (1) "commit[ted] a lewd act upon [FA], a child who had not attained the age of 16 years, by intentionally exposing his genitalia to her with an intent to gratify his sexual desire," and (2) "commit[ted] a sexual act upon [FA], a child who had not attained the age of 12 years, by causing penetration of her mouth with his penis." Importantly for the purposes of this appeal, the charge sheet alleged that these events occurred "between on or about 1 April 2016 and on or about 30 April 2016."

At trial, the Government relied primarily on testimony from the victim and her mother to prove its case. Although the testimony as to the conduct itself was more or less consistent, the time line was confusing. In order to identify the dates when the charged offenses occurred, the victim and her mother needed to rely on a complex mental matrix of various locations at which they had lived and personal events that had occurred. As such, their testimony regarding the date of the offenses was muddled.

Upon recognizing that there was a potential discrepancy between the dates listed on the charge sheet and those raised in the trial testimony, trial counsel asked the military judge to instruct the panel members on variance.[3] The

---

[2] The CCA opinion provides a detailed review of the testimony adduced at trial. *United States v. Kershaw*, No. ACM 40455 (f rev), 2025 CCA LEXIS 205, at *4-8, 2025 WL 1331477, at *2-3 (A.F. Ct. Crim. App. Mar. 27, 2025) (unpublished).

[3] "A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the

military judge did so. The panel members subsequently convicted Appellee, contrary to his pleas, of the sexual abuse of a child specification without any exceptions or substitutions. They acquitted him of the rape of a child specification. The military judge sentenced Appellee to two years of confinement, reduction to the grade of E-1, a reprimand, and a dishonorable discharge.

Upon appeal to the Air Force CCA, Appellee challenged the factual sufficiency of his conviction, claiming that the evidence adduced at trial demonstrated that the alleged sexual abuse occurred outside the charged time frame. The CCA agreed. In a divided decision, the lower court held that Appellee's conviction was factually insufficient in light of the failure of the evidence to prove beyond a reasonable doubt that the offense in issue occurred "between on or about 1 April 2016 and on or about April 30, 2016." *Kershaw*, 2025 CCA LEXIS 205, at *16, 2025 WL 1331477, at *6 (internal quotation marks omitted). The CCA concluded that the conflicting evidence indicated "the best estimate as to when the incident occurred is sometime between April 2015 and October 2015, placing the offense date six months to a year before the timeframe charged in the specification." *Id.* at *14, 2025 WL 1331477, at *5. The lower court went on to opine that such a time gap was "too substantial" to be encompassed by the "on or about" language of the specification, and thus the evidence failed "to support a finding of factual sufficiency." *Id.* at *15, 2025 WL 1331477, at *6.

In reaching this conclusion, the CCA declined the Government's invitation to apply "a variance standard of review." *Id.* at *12, 2025 WL 1331477, at *5. The lower court reasoned that because a variance instruction was given at trial and the members "made no changes," "there is no variance issue for [us] to consider." *Id.* at *12-13, 2025 WL 1331477, at *5. The dissenting judge argued that the conviction was factually sufficient and that the majority erred

---

offense alleged in the charge." *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003) (internal quotation marks omitted).

in failing to "consider[] divergences between the charged timeframe and proof at trial as a mere variance under the specific facts of this case and then evaluating for prejudice." *Id.* at \*17, 2025 WL 1331477, at \*6 (Kearley, J., dissenting).

The acting Judge Advocate General of the Air Force then certified the following issue for our review:

> Where time was not an essential element of the offense, did the Air Force Court of Criminal Appeals err by finding factual insufficiency based on a discrepancy between the dates pleaded and the dates proved, when the Court should have applied a variance analysis and found a non-fatal variance instead.

*United States v. Kershaw*, 86 M.J. 133 (C.A.A.F. 2025) (docketing notice of certificate for review).

In sum, Appellee argues before this Court that the CCA "acted within its discretion when it declined to analyze the discrepancy in proof as a variance." The Government, on the other hand, argues that "if there are discrepancies between the proof and pleading of non-essential facts, courts conducting factual sufficiency reviews must assess the difference as a variance and analyze whether the variance was (1) material; and (2) if it prejudiced the appellant." We address both of these opposing positions below.

## II. Discussion[4]

The version of Article 66, UCMJ, that applies to the instant case states in pertinent part: "[A service Court of Criminal Appeals] may affirm only such findings of guilty . . . as [it] finds correct in law and fact and determines, on the basis of the entire record, should be approved." 10

---

[4] We highlight that the following principles of law pertain to a CCA's review of a specification that resulted in a conviction following a contested trial for that offense. However, when a CCA reviews a conviction resulting from a guilty plea, it applies neither legal nor factual sufficiency review and instead considers the providence of the plea. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996).

U.S.C. § 866(d)(1) (2018). As relevant to this appeal, this provision empowers a CCA to engage in what is colloquially known as a "factual sufficiency review." *See, e.g.*, *United States v. Harvey*, 85 M.J. 127, 129 (C.A.A.F. 2024). A review of our key precedents in this area of the law is helpful in determining the scope and nature of this authority.

In the recent case of *United States v. Patterson*, this Court affirmed the Air Force CCA's finding that a conviction was factually insufficient because the government had not proven that the incident occurred during the dates alleged in the specification. 86 M.J. 24, 30 (C.A.A.F. 2025). In doing so, we concluded that this finding was within the CCA's discretionary authority under the prior version of Article 66. *Id.* at 29-30. Thus, *Patterson* stands for the proposition that a CCA may base a finding of factual insufficiency on a discrepancy between the dates pleaded and those proven at trial, without the CCA conducting a variance analysis. Accordingly, the Government's contention before this Court that CCAs *must* employ a variance analysis in these types of cases is foreclosed by our precedent.

It is important to note, however, that our opinion in *Patterson* explicitly declined to address whether a CCA *can* conduct a variance analysis in such circumstances and assess for prejudice. Specifically, in resolving the question presented in *Patterson* this Court "express[ed] no opinion about whether the AFCCA might have affirmed the finding of guilty notwithstanding the discrepancy between the facts alleged and the facts proved using . . . [a] variance analysis." *Id.* at 29. Therefore, we must turn to earlier precedents for guidance in answering this question.

In *United States v. Hunt,* the government used the typical "on or about" language in the charge sheet when citing the date that the offense allegedly occurred. 37 M.J. 344, 345 (C.M.A. 1993). However, even with this latitude afforded the government, the appellant argued there was a variance between the date pleaded and the date proven at trial. *Id.* The lower court engaged in a variance analysis, even in the absence of exceptions and substitutions by the panel at trial, and found that the variance in the date

pleaded and the date proven was "not fatal" based on such "criteria" as the following: the appellant was not misled by the variance; the appellant had notice of what he needed to defend against at trial; and the variance did not undermine the appellant's ability to protect himself from another trial for the same offense. *United States v. Hunt*, 34 M.J. 779, 781-82 (A.C.M.R. 1992). In other words, the lower court in *Hunt* engaged in a variance analysis and tested for prejudice—and this Court affirmed the lower court. In doing so, we did not merely say there was no material variance between the dates pleaded and the dates proven at trial. Rather, we also stated:

> [A]ssuming a material variance [between the dates pleaded and the dates proven] occurred here as a matter of law, we still cannot find reversible error in the judge's denial of the motion for a finding of not guilty. To prevail on that motion appellant must show that he was prejudiced by the variance in this case.

*Hunt*, 37 M.J. at 347.

This Court's affirmance of the lower court's decision in *Hunt* demonstrates that a CCA may engage in a variance analysis even when there are no exceptions and substitutions made by the trier of fact. This position is consistent with our other case law that makes it clear that when a CCA conducts a factual sufficiency review, it must engage in an *independent* determination of the sufficiency of the evidence. *See, e.g.*, *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (noting a CCA conducting a factual sufficiency review "must assess the evidence in the entire record without regard to the findings reached by the trial court, and it must make its own independent determination"). Thus, a CCA's authority to engage in a variance analysis is not derivative of, or dependent upon, a panel's decision to make exceptions and substitutions. Stated simply, the factfinder below cannot serve as a variance gatekeeper; a CCA has the authority to engage in a variance analysis regardless of what a panel has done in terms of exceptions and substitutions below.

Next, we examine the case of *United States v. Lubasky*. In that case we were not confronted with a *factual* sufficiency review by a CCA; rather, we conducted our own *legal* sufficiency review of the offense for which the appellant was convicted. 68 M.J. 260 (C.A.A.F. 2010). Moreover, the factual discrepancy in that case involved the person who was the victim of the charged larceny—which is an element of that offense.[5] *Id.* at 263. As can be seen then, our holding in *Lubasky* did not touch on the extent of *a CCA's factual sufficiency review authority* under Article 66 when the discrepancy between the fact pleaded and the fact proven was *not an element of the charged offense*. Thus, *Lubasky* is of limited guidance here.

The case of *United States v. English*, however, does stand for several important principles applicable here. 79 M.J. 116 (C.A.A.F. 2019). In *English*, the government charged the appellant under Article 120(a)(1), UCMJ, 10 U.S.C. § 920(a)(1) (2012), and thus was required to prove as an element of the offense that the accused had used "unlawful force" in the course of committing the sexual act. But instead of simply invoking the phrase "by using unlawful force" as provided for in the sample specification, the government chose to include in the charge sheet the factual detail that the accused had forced the victim to engage in the sexual act by "*grabbing her head with his hands.*" 79 M.J. at 119 (internal quotation marks omitted). And yet at trial, the victim did not testify to this fact, explaining that she could not remember the details of the sexual assault. *Id.* Nevertheless, on appeal the CCA affirmed the appellant's conviction by excepting the words "to wit: grabbing her head with his hands." *Id.* at 120 (internal quotation marks omitted). We reversed, concluding that the CCA did not have the authority to affirm the appellant's

---

[5] The elements of Article 121, UCMJ, 10 U.S.C. § 921, require the government to prove, among other things, "[t]hat the property belonged to a certain person" because the government must prove that the victim had a superior possessory interest vis-à-vis the accused. *Manual for Courts-Martial, United States* pt. IV, para 64.b (2024 ed.) (*MCM*).

conviction "based on a theory of criminality not presented at trial." *Id.* at 119.

*English* stands for three key principles that are relevant here. First, a CCA may make exceptions if they "narrow the scope of an appellant's conviction to that conduct it deems legally sufficient" or may affirm a lesser included offense of the convicted offense pursuant to the provisions of Article 59(b), UCMJ, 10 U.S.C. § 859(b). *English,* 79 M.J. at 120 & n.3. Second, "there is no authority, statutory or otherwise, that permits [a CCA] to except language from a specification in such a way that creates a broader or different offense than the offense charged at trial." *Id.* at 121. And third, "it is a fundamental tenet of due process that an appellate court may not affirm a conviction based on a more generalized and generic theory of force not submitted to the trier of fact." *Id.* at 122.

In reviewing these facts and the principles derived therefrom, we conclude there is nothing in *English* that prohibits a CCA from conducting a variance analysis in the course of a factual sufficiency review when there is a discrepancy between the facts pleaded by the government and the facts proven at trial *if* the discrepant facts are not an integral part of an element of the charged offense. We further conclude that there is nothing in *English* that prevents a CCA from finding a conviction factually sufficient *if* the variance does not prejudice the appellant such as by creating a broader or different offense than the offense charged at trial or by otherwise offending the due process rights of the appellant.[6]

---

[6] For example, if an accused is charged with stealing a blue car but the testimony at trial demonstrates that the car he stole was actually dark green, and if a CCA concludes that the appellant would not be prejudiced by the CCA excepting the word "blue," then the CCA would not err by doing so. The factual description of the stolen car might be broader or different but the *offense* would not be broader or different—the appellant would still stand convicted of the offense of larceny. For the same reason, the color of the car (while *relating to* an element) is not an integral part of an element, being mere surplusage.

Having demonstrated that neither the text of Article 66 nor applicable precedents preclude a CCA from conducting a variance analysis within the parameters described above, we now turn our attention to explaining why this authority properly resides within the purview of a service court. First, testing for prejudice is a traditional role of appellate courts when there are errors or missteps at the trial level.[7] Indeed, even many errors of constitutional dimensions are subject to being tested for prejudice. *See United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (noting "relief for [nonstructural] error is tied in some way to prejudicial effect"); *United States v. Cole*, 84 M.J. 398, 404 (C.A.A.F. 2024) (noting if "forfeited error is constitutional in nature, then material prejudice is assessed using the harmless beyond a reasonable doubt standard" (citation modified)). Therefore, it would be odd indeed if this Court were to deny this ability to the CCAs when they are exercising their factual sufficiency review authority which is derived from statute.[8] Second, for many decades this Court has repeatedly emphasized that the prior version of Article 66 grants CCAs "awesome, plenary" authority in the course of conducting factual sufficiency reviews. *See, e.g.*, *United States v. Nerad*, 69 M.J. 138, 144 (C.A.A.F. 2010) (internal quotation marks omitted) (quoting *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007)). It would be incongruous for

---

[7] The types of prejudice that a CCA must consider in this context include whether the discrepancy materially misled the accused regarding what he needed to defend against at trial; failed to protect the accused from another prosecution for the same offense; altered the nature of the offense; changed the applicable maximum punishment; or in any other way materially infringed on the accused's due process rights. *See, e.g.*, *United States v. Treat*, 73 M.J. 331, 336 (C.A.A.F. 2014); *United States v. Lee*, 1 M.J. 15, 17 (C.M.A. 1975).

[8] The invocation of phrases such as "The government is in control of the charge sheet and therefore should be required to prove whatever facts it pleads" does not rebut this point. There are many things that a trial counsel is "in control of" before and during a trial, but a CCA still is typically authorized to assess the prejudice such actions have on the accused.

this Court to now change course and place a novel restriction on this authority when such a step is not compelled by the plain language of Article 66.[9] And third, placing such a restriction on the CCAs would run counter to the interests of justice. This latter point is perhaps best illustrated by the following hypothetical.

Let us say that the government has charged a servicemember with assault consummated by a battery under Article 128, UCMJ. This offense requires the government to prove just three elements: "(a) That the accused did bodily harm to a certain person; (b) That the bodily harm was done unlawfully; and (c) That the bodily harm was done with force or violence." *MCM* pt. IV, para. 77.b.(2). However, the specification as drafted by the trial counsel follows the sample specification in the *Manual* and reads as follows: "In that Private John R. Smith did, in Arlington, Virginia, on or about 15 June 2025, unlawfully strike Private James S. Jones on the back with a baseball bat." *See id.* para. 77.e.(2). At trial, the only person who testifies as to the location of the offense states that it occurred in Alexandria, Virginia, rather than Arlington. On appeal, the defense argues that because there is a discrepancy between the facts that were charged by the government and the

---

[9] The dissent's concern over "allow[ing] a CCA to affirm" verdicts "[it] finds to be *incorrect in fact*" as contrary to Article 66 is misplaced. *United States v. Kershaw*, __ M.J. __, __ (6) (C.A.A.F. 2026) (Maggs, J., with whom Hardy, J., joined, dissenting). For example, CCAs under the current version of Article 66 only review factual sufficiency upon request of an appellant and thus may well affirm a conviction not "correct in fact." 10 U.S.C. § 866(d)(1). Likewise, waiver doctrine may preclude consideration of a defense that, if assessed, would undermine a finding of guilt as a factual matter. *See, e.g.*, *United States v. Franks*, 76 M.J. 808, 814 n.5 (A. Ct. Crim. App. 2017) (holding "the defense of lack of mental responsibility" affirmatively waived). And assessment of prejudice is often applied in consideration of legal error—which has never been seen as counter to Article 66's requirement that a CCA affirm only findings of guilt it finds are "correct in law."

facts that were proven at trial, the appellant's conviction was factually insufficient.

We conclude that at this point, the CCA has two options: it can decide that the conviction is indeed factually insufficient because of the noted factual discrepancy *or*, because the location of the incident was not an integral part of one of the elements of the offense, the CCA can instead engage in a variance analysis and test for prejudice.[10] Then, if the CCA concludes that the discrepancy between the fact pleaded (that the assault occurred in Arlington) and the fact proven at trial (that the assault occurred in Alexandria) did not prejudice the appellant, the CCA would have the authority to find that the conviction was factually sufficient. To hold otherwise would not be consistent with basic principles of justice. As noted above, errors and missteps are an unfortunately common by-product of criminal trials, and absent extraordinary circumstances, they do not serve as automatic death knells for righteous convictions. Rather, testing these errors and missteps for prejudice is the typical legal paradigm upon appellate review, and such an approach should not be prohibited here. And we underscore that as shown in the hypothetical explored above, the appellant would have been *charged* with the offense of

---

[10] The instant case involves dates. This fact adds a layer of analytical complexity because, as is typical in such instances, the specification refers to "on or about" a certain date range. Therefore, the discrepancy at issue is not initially binary as is the case in the hypothetical discussed above. So, to be clear, in those cases where dates are involved, a CCA must first resolve the question of whether the "on or about" language in the specification means that there actually is no variance to address. In doing so, our case law on this subject remains good law; nothing in this opinion disturbs our precedent on this topic. *See United States v. Simmons*, 82 M.J. 134, 139 (C.A.A.F. 2022); *Hunt*, 37 M.J. at 347; *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999). It is only after a CCA determines that the date proven at trial falls outside of the range created by the use of the "on or about" language in the specification that the CCA should then proceed to the next step of deciding whether to use the type of variance analysis discussed above.

assault consummated by a battery for unlawfully inflicting bodily harm on Private James S. Jones by hitting him on the back with a baseball bat, and the appellant would stand *convicted* of the offense of assault consummated by a battery for unlawfully inflicting bodily harm on Private James S. Jones by hitting him on the back with a baseball bat. There is nothing fundamentally unfair here.[11]

## III. Conclusion

Consistent with this Court's precedents, and pursuant to the CCAs' broad authority under the prior version of Article 66, we hold that if there is a discrepancy between a fact pleaded by the government and a fact proven at trial—and if that fact is not an integral part of an element of the charged offense—a CCA has the authority to conduct a variance analysis and test the discrepancy for prejudice. This holds true regardless of whether the trier of fact made exceptions and substitutions at trial. If the variance analysis reveals no prejudice to the appellant, the CCA may affirm the conviction on factual sufficiency grounds despite the discrepancy. Because the court below disclaimed any authority to conduct the variance analysis and thereby committed legal error, the decision below is set aside. The record is returned to the Judge Advocate General of the Air Force for remand to the United States Air Force Court of Criminal Appeals for a new factual sufficiency review of the conviction, consistent with this opinion, as well as consideration of any other issues mooted by its prior decision.

---

[11] As an aside, we note that if we were to adopt the position of Appellee in this case, future accused servicemembers could be disadvantaged because we would be incentivizing trial counsel to draft bare-bones specifications providing the constitutional minimum of notice. Conversely, accused servicemembers would be incentivized to avoid broaching a variance issue when spotted at trial so as to retain a devastating trump card on appeal.

Judge MAGGS, with whom Judge HARDY joins, dissenting.

A general court martial found Appellee guilty of a single specification of child abuse committed "between on or about 1 April 2016 and on or about 30 April 2016." On appeal, the United States Air Force Court of Criminal Appeals (AFCCA) conducted a factual sufficiency review as required by the applicable version of Article 66(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d) (2018). *United States v. Kershaw*, No. ACM 40455 (f rev), 2025 CCA LEXIS 205, at *8-16, 2025 WL 1331477, at *3-6 (A.F. Ct. Crim. App. Mar. 27, 2025) (unpublished). In so doing, the AFCCA determined that "convincing evidence" showed that the offense occurred "several months" before the date alleged in the specification. *Id.* at *12, *16, 2025 WL 1331477, at *5-6. The AFCCA therefore concluded that the evidence was not factually sufficient and set aside the finding of guilty and the sentence. *Id.* at *16, 2025 WL 1331477, at *6.

The Court today sets aside the AFCCA's decision and remands the case for a new factual sufficiency review. The Court directs that on remand the AFCCA consider a new rule that the Court articulates as follows:

> [I]f there is a discrepancy between a fact pleaded by the government and a fact proven at trial—and if that fact is *not an integral part of an element of the charged offense*—a [Court of Criminal Appeals (CCA)] has the . . . authority to conduct a variance analysis and test that discrepancy for prejudice. . . . If the variance analysis reveals no prejudice to the appellant, the CCA may affirm the conviction on factual sufficiency grounds despite the discrepancy.

The Court emphasizes that this new rule applies "regardless of whether the trier of fact made exceptions and substitutions at trial."

In my view, the new rule articulated by the Court is not supported by precedent and stands at odds with other well-established principles that the CCAs must apply when conducting a factual sufficiency review. I therefore would not remand the case for the AFCCA to consider this new rule.

Instead, I would simply affirm the AFCCA's judgment. Because the Court reaches a different conclusion, I respectfully dissent.

### I. The AFCCA's Application of Settled Principles

In conducting its factual sufficiency review, the AFCCA considered and applied four uncontroversial principles. The first principle is that a CCA conducts a variance analysis when a court-martial finds an accused guilty *with exceptions and substitutions* pursuant to Rule for Courts-Martial 918(a). *United States v. Marshall*, 67 M.J. 418, 420-21 (C.A.A.F. 2009) (analyzing whether a substitution concerning the name of the soldier from whom the accused was alleged to have escaped custody was material and prejudicial). In this case, the AFCCA concluded that this first principle did not apply because the court-martial did not find Appellee guilty by exceptions and substitutions. *Kershaw*, 2025 CCA LEXIS 205, at *12-13, 2025 WL 1331477, at *5.

The second principle is that when a specification alleges that an offense occurred "on or about" a stated date, the words " 'on or about' connote[] a range of days to weeks." *United States v. Simmons*, 82 M.J. 134, 139 (C.A.A.F. 2022). Based on this definition, the AFCCA concluded that Appellee's conduct did not occur "on or about" the dates alleged in the specification because "convincing evidence" showed that they occurred "several months" earlier. *Kershaw*, 2025 CCA LEXIS 205, at *12, *16, 2025 WL 1331477, at *5-6.

The third principle is that "there is no authority, statutory or otherwise, that permits [a CCA] to except language from a specification in such a way that creates a . . . different offense than the offense charged at trial." *United States v. English*, 79 M.J. 116, 121 (C.A.A.F. 2019). The AFCCA recognized this principle and did not attempt to change the wording of the specification of which Appellee was found guilty so that it would match the proof at trial. *Kershaw*, 2025 CCA LEXIS 205, at *13, 2025 WL 1331477, at *5.

The fourth principle, which comes directly from the applicable version of Article 66(d)(1), UCMJ, is that a CCA "may affirm *only such findings of guilty . . . as the Court*

*finds correct in . . . fact.*" (Emphasis added.) Conducting this required factual sufficiency review, in conjunction with the three previously stated principles, the AFCCA set aside the finding of guilty. *Kershaw*, 2025 CCA LEXIS 205, at *16, 2025 WL 1331477, at *6. The finding of guilty, in the AFCCA's determination, was not supported by factually sufficient evidence given the discrepancy between the dates alleged and the dates proved. *Id.* at *8-16, 2025 WL 1331477, at *3-6.

The Court today expresses no disagreement with the AFCCA's application of any of these four principles and does not ask the AFCCA to revisit them on remand. The Court accepts that the AFCCA was not *required* to perform a variance analysis because the court-martial did not find Appellee guilty by exceptions and substitutions. The Court does not mention any disapproval of the AFCCA's conclusion that a period of several months is too great to fit into the narrow range described by the words "on or about." The Court similarly does not fault the AFCCA for failing to adjust the specification using exceptions or substitutions. The Court even agrees that Article 66(d), UCMJ, *authorized* the AFCCA to set aside the finding of guilty in this case because of the discrepancy between the dates pleaded by the Government and the proof presented at trial.

But despite this general agreement, the Court decides that a remand to the AFCCA is necessary so that the AFCCA can consider the application of its new rule. The Court's remand for this purpose is proper, however, only if the new rule is valid.

## II. Validity of the Court's New Rule

The Court's new rule—to repeat—authorizes, but does not require, a CCA to affirm a finding of guilty, even if the government did not prove a fact stated in the specification, so long as the "fact is *not an integral part of an element of the charged offense*" and a failure of the government's proof causes no prejudice to the accused. To apply this new rule, the CCA presumably must draft amended findings—as if it had the authority to make exceptions and substitutions even when it does not—and then use a variance analysis to

compare those amended findings to the panel's actual findings.

This new rule may or may not reflect good policy considerations, but I cannot agree with it as a matter of law. The new rule that the Court is asking the AFCCA to consider is not supported by this Court's precedent. And the new rule also stands at odds with most of the uncontroversial principles described above that the AFCCA used to decide this case.

As authority for the new rule, the Court relies primarily on a brief passage in *United States v. Hunt*, 37 M.J. 344 (C.M.A. 1993), *cert. denied*, 510 U.S. 1111 (1994). The passage states:

> [A]ssuming a material variance [between the dates pleaded and the dates proven] occurred here as a matter of law, we still cannot find reversible error in the judge's denial of the motion for a finding of not guilty. To prevail on that motion appellant must show that he was prejudiced by the variance in this case.

*Id.* at 347. This passage from *Hunt* does not exactly match the Court's new rule because it does not distinguish between integral and nonintegral facts and it does not mention findings by exceptions and substitutions. But I agree with the Court that the passage contemplates that a CCA will conduct a prejudice analysis when assessing a discrepancy between the facts pled and the facts proved. That said, I am not persuaded that this passage is binding.

The *Hunt* decision was primarily about the meaning of the words "on or about" in a specification. The specification at issue alleged that the appellant had committed a rape *"on or about 20 October 1989."* *Id.* at 345. Evidence in the record established that the conduct in question may have occurred as early as three weeks before October 20, 1989. *Id.* at 346. This Court nevertheless affirmed the finding of guilty, holding that the words "on or about" could cover dates within a three-week range. *Id.* at 347. The Court explained:

> Appellant was not charged with rape on October 20, 1989, but with rape "on or about October 20, 1989." The words "on or about" in pleadings mean

> that "the government is not required to prove the
> exact date, if a date *reasonably near* is estab-
> lished." *United States v. Nersesian*, [824 F.2d
> 1294, 1323 (2d Cir. 1987)] (emphasis added); *see*
> *United States v. Brown*, [34 M.J. 105, 110 (C.M.A.
> 1992)]. Here the evidence of record established
> that the offense of rape occurred within 3 weeks of
> October 20, 1989, the date the rape was reported.

*Id.* Recognizing this holding, this Court routinely has cited *Hunt* as standing for the proposition that the phrase "on or about" a date covers a range of dates reasonably near the stated date. *See, e.g.*, *Simmons*, 82 M.J. at 139 (quoting *Hunt*, 37 M.J. at 347, for the proposition that "[t]he words 'on or about' in pleadings mean that 'the government is not required to prove the exact date [of an offense], if a date *reasonably near* is established.' " (alterations in original)); *United States v. Barner*, 56 M.J. 131, 137 (C.A.A.F. 2001) (same); *United States v. Williams*, 40 M.J. 379, 382 (C.M.A. 1994) (same).

The passage in *Hunt* addressing prejudice appears in the opinion after the Court's holding regarding the meaning of "on or about" and is best read as dicta. The Court stated that even "assuming a material variance occurred," the variance would not require reversal absent prejudice. *Hunt*, 37 M.J. at 347. This statement was not necessary to the Court's decision given that the Court had already decided that a period of three weeks was "on or about" the date alleged in the specification. The Court was merely addressing a hypothetical situation.

What a court says in dicta is not always wrong, but the dicta in *Hunt* was poorly supported. The only military justice case that the Court cited to support the dicta was *United States v. Lee*, 1 M.J. 15 (C.M.A. 1975). *Hunt*, 37 M.J. at 347. In *Lee*, the Court conducted a variance analysis after the court-martial had made findings of guilty by exceptions and substitutions. 1 M.J. at 15-18 (holding that a substitution of " 'marijuana in the form of three growing marijuana plants' " for " 'marijuana in hashish form' " was not a fatal variance). *Lee* did not address the question whether a CCA could apply a variance analysis when a court-martial had not made findings by exceptions and substitutions. *Lee* therefore was not on point.

In addition, even if the dicta in *Hunt* at one time properly stated the law, the new rule that the Court derives from it now stands at odds with several of the well-established principles applied by the AFCCA. For example, the new rule largely undercuts the principle that the term "on or about" encompasses a range of dates separated by days or weeks, but not months or years. Under the new rule, whether the evidence establishes that an accused's conduct occurred within days or weeks of a date alleged in a specification is no longer determinative. The test now is effectively one of prejudice. So long as there is no prejudice, the dates pled in a specification do not matter, and a discrepancy of any length is permissible.

The Court's new rule also renders largely nugatory the principle that a CCA may not modify the words of a specification to alter the offense. Under the new rule, it does not matter whether a CCA may revise the words of a specification because the CCA may affirm a finding of guilty even if the dates proved do not match the dates alleged in the specification. In this case, for example, the new rule would allow the AFCCA on remand to affirm a finding that Appellee committed child abuse "between on or about 1 April 2016 and on or about 30 April 2016," even though the CCA has determined that convincing evidence shows otherwise. Is it not worse for a CCA to affirm a finding of guilty that is incorrect in fact than to allow the CCA to correct the inaccuracy?

Finally, and perhaps most importantly, the Court's new rule conflicts with the text of the applicable version of Article 66(d), UCMJ. This provision states unambiguously that a CCA "may affirm *only such findings* of guilty . . . as the Court *finds correct in . . . fact*." Article 66(d)(1), UCMJ (emphasis added). The new rule, however, will allow a CCA to affirm some findings of guilty that the CCA finds to be *incorrect in fact*. Indeed, the Court's remand order directs the AFCCA to consider doing exactly that.

In pointing out these problems with the new rule announced by the Court, I am not suggesting that the new rule is unworkable or will necessarily produce bad results. Indeed, federal appellate courts outside of the military justice system long have used a prejudice test similar to the

new rule. *See, e.g.*, *United States v. Cochran*, 697 F.2d 600, 604-05 (5th Cir. 1983) (upholding a conviction where " 'on or about November 1, 1981' " was alleged, and September 1981 was proven, because there was no prejudice to the defendant). Those federal appellate courts, however, are not bound by Article 66(d)(1), UCMJ, which expressly directs a CCA to affirm only findings of guilty that are correct in fact. Whether the CCAs should have powers similar to other federal appellate courts is a policy question that is best left to Congress.

Some might criticize a system that would allow the AFCCA to set aside a finding that the accused is guilty of a serious offense like child abuse merely because of an error in the dates stated in the specification. Those making such a criticism, however, should remember that the whole problem of discrepancies between facts alleged and facts proved is largely in the hands of the government. The government drafts the specifications and is therefore in control of everything in the charge sheet. Therefore, if the government includes facts in a specification that the government cannot prove, that is ultimately a problem of the government's own making. In addition, the government has many tools at its disposal—including seeking exceptions and substitutions at trial—for dealing with discrepancies between the evidence admitted and the specifications.

### III. Conclusion

For these reasons, I would affirm the judgment of the United States Air Force Court of Criminal Appeals.